# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued April 24, 2020                      Decided April 9, 2021

No. 19-5161

CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON
AND NOAH BOOKBINDER,
APPELLANTS

v.

FEDERAL ELECTION COMMISSION,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cv-00076)

*Stuart McPhail* argued the cause for appellants. With him on the briefs was *Adam J. Rappaport*.

*Paul M. Smith*, *Tara Malloy*, and *Megan P. McAllen* were on the brief for *amicus curiae* Campaign Legal Center in support of appellants.

*Haven G. Ward*, Attorney, Federal Election Commission, argued the cause for appellee. With him on the brief was *Kevin Deeley*, Associate General Counsel.

*Randy Elf*, *pro se*, was on the brief for *amicus curiae*

Randy Elf in support of appellee.

Before: MILLETT, KATSAS, and RAO, *Circuit Judges*.

Opinion of the Court filed by *Circuit Judge* RAO.

Dissenting opinion filed by *Circuit Judge* MILLETT.

RAO, *Circuit Judge*: In our system of separated powers, an agency's decision not to enforce the law is an exercise of executive discretion and therefore generally unreviewable by the courts. The Federal Election Campaign Act, however, includes an unusual provision that allows a private party to challenge a nonenforcement decision of the Federal Election Commission if it is "contrary to law." 52 U.S.C. § 30109(a)(8)(A), (C). In this case, the Commission did not pursue an enforcement action against New Models because the non-profit organization was not a "political committee" under the Act and because, exercising "prosecutorial discretion," the Commission did not find proceeding with enforcement to be an appropriate use of its resources. Citizens for Responsibility and Ethics in Washington ("CREW") now seeks judicial review of the Commission's nonenforcement decision.

We cannot review the Commission's decision because it rests on prosecutorial discretion. Despite the authority to review a nonenforcement decision to determine whether it is "contrary to law," we recently held that a Commission decision based even in part on prosecutorial discretion is not reviewable. *Citizens for Responsibility & Ethics in Washington v. FEC* ("*Commission on Hope*"),[1] 892 F.3d 434 (D.C. Cir. 2018); *see also Heckler v. Chaney*, 470 U.S. 821 (1985). Here, the

---

[1] To distinguish previous cases brought by CREW, we refer to this case by the name of the association against which CREW brought an administrative complaint—the Commission on Hope, Growth, and Opportunity.

Commissioners who voted against enforcement invoked prosecutorial discretion to dismiss CREW's complaint, and we lack the authority to second guess a dismissal based even in part on enforcement discretion. We therefore affirm the district court's grant of summary judgment to the Commission.

I.

CREW filed a citizen complaint in 2014 with the Commission against New Models, a now-defunct non-profit entity that CREW alleges violated the Federal Election Campaign Act's ("FECA") registration and reporting requirements for "political committees." *See* Federal Election Campaign Act of 1971, 52 U.S.C. § 30109(a)(1) (providing that "[a]ny person who believes a violation of [FECA] has occurred, may file a complaint with the Commission"). After reviewing CREW's complaint and New Models' response and conducting an initial investigation, the Commission deadlocked 2–2 on whether to proceed with investigating New Models.[2] Under FECA, an affirmative vote of four commissioners is required for the agency to initiate enforcement proceedings. *Id.* § 30109(a)(2), (4)(A)(i). Because there were only two votes in favor of moving forward with an enforcement action against New Models, the Commission dismissed CREW's complaint.

The Commissioners who voted against proceeding issued a thirty-two page statement of reasons explaining the basis for

---

[2] The Commission is comprised of six commissioners "appointed by the President, by and with the advice and consent of the Senate." 52 U.S.C. § 30106(a)(1). "No more than 3 members of the Commission … may be affiliated with the same political party." *Id.* Only four commissioners participated in this case, because the fifth commissioner was recused and there was no sixth commissioner at the time.

their decision. These two "controlling Commissioners"[3] dedicated most of the statement to legal analysis of the alleged violations, explaining that New Models did not qualify as a "political committee" under FECA. In the final paragraph, the controlling Commissioners stated they were also declining to proceed with enforcement "in exercise of [their] prosecutorial discretion." J.A. 133. Citing the Supreme Court's decision in *Chaney*, the controlling Commissioners explained that "[g]iven the age of the activity and the fact that the organization appears no longer active, proceeding further would not be an appropriate use of Commission resources." J.A. 133 n.139; *see also* J.A. 109 & n.32 (noting that New Models "liquidated, terminated, dissolved, or otherwise ceased operations" as of 2015).

CREW sought review of the Commission's dismissal in the United States District Court for the District of Columbia under FECA's judicial review provision, which permits a complainant "aggrieved" by a Commission dismissal to file a petition for review and empowers the court to "declare that the dismissal of the complaint … is contrary to law." 52 U.S.C. § 30109(a)(8)(A), (C). The district court granted summary judgment to the Commission. *CREW v. FEC*, 380 F. Supp. 3d 30, 45 (D.D.C. 2019). The district court found this case was controlled by *Commission on Hope*, in which we held that a nonenforcement decision is not subject to judicial review under FECA if the Commissioners who voted against enforcement "place[] their judgment squarely on the ground of prosecutorial

---

[3] When the Commission lacks four votes to proceed, the commissioners who voted against enforcement must "state their reasons why." *Democratic Cong. Campaign Comm. v. FEC* ("*DCCC*"), 831 F.2d 1131, 1132 (D.C. Cir. 1987); *see also Common Cause v. FEC*, 842 F.2d 436, 449 (D.C. Cir. 1988). The reasons offered by these "so-called 'controlling Commissioners'" are then "treated as if they were expressing the Commission's rationale for dismissal." *Comm'n on Hope*, 892 F.3d at 437.

discretion." 892 F.3d at 439. According to the district court, this case posed precisely the same question as *Commission on Hope*: "[H]ow closely may a court scrutinize the FEC's exercise of prosecutorial discretion in dismissing an administrative complaint?" *CREW*, 380 F. Supp. 3d at 39. Under *Commission on Hope*, the district court explained, the answer is "not at all." *Id.*

CREW attempted to distinguish *Commission on Hope* because the Commission's statement of reasons in this case featured only a brief mention of prosecutorial discretion alongside a robust statutory analysis, whereas the statement of reasons in *Commission on Hope* rested exclusively on prosecutorial discretion. The district court rejected this distinction and explained that *Commission on Hope* explicitly refused to "carv[e] reviewable legal rulings out from the middle of non-reviewable actions," and held that "even if some statutory interpretation could be teased out of the … statement of reasons," the dismissal still would not be subject to judicial review. *Id.* at 41. The district court explained the Commission's "legal analyses are reviewable only if they are the *sole reason* for the dismissal of an administrative complaint." *Id.* at 42. Because "the [c]ontrolling Commissioners' invocation of prosecutorial discretion" in this case "did not rely on their interpretation of FECA or case law," the district court held that the dismissal was unreviewable in its entirety under *Commission on Hope*. *Id.*

This timely appeal followed. We review the district court's grant of summary judgment *de novo*. *Comm'n on Hope*, 892 F.3d at 440.

## II.

The Commission's decision to dismiss CREW's complaint against New Models rested on two distinct grounds: the Commission's interpretation of FECA and its "exercise of … prosecutorial discretion." J.A. 133. CREW contends that

the Commission's decision must be judicially reviewable under FECA's "contrary to law" standard. We disagree because a Commission decision that rests even in part on prosecutorial discretion cannot be subject to judicial review. This conclusion follows inexorably from our recent decision in *Commission on Hope* as well as other longstanding precedents recognizing the constitutionally grounded limits of judicial review over prosecutorial and administrative discretion.

## A.

To begin with, this case is not materially distinguishable from *Commission on Hope*, in which we made clear that the Commission has "unreviewable prosecutorial discretion to determine whether to bring an enforcement action." 892 F.3d at 438. Applying the Supreme Court's decision in *Chaney*, we explained that the Commission's "exercise of its prosecutorial discretion cannot be subjected to judicial scrutiny." *Id.* at 439. In *Chaney*, the Supreme Court held that agency decisions not to proceed with enforcement are presumptively unreviewable under Section 701(a)(2) of the Administrative Procedure Act ("APA"), which precludes courts from reviewing actions "committed to agency discretion [by law]." *Chaney*, 470 U.S. at 832–33; *see also* 5 U.S.C. § 701(a)(2). Moreover, the Court recognized that agency decisions about whether to prosecute or enforce are "decision[s] generally committed to an agency's absolute discretion," a recognition "attributable in no small part to the general unsuitability for judicial review of agency decisions to refuse enforcement." *Chaney*, 470 U.S. at 831. Following *Chaney* as well as circuit precedent, we held that "agency enforcement decisions, to the extent they are committed to agency discretion, are not subject to judicial review for abuse of discretion." *Commission on Hope*, 892 F.3d at 441. Because in FECA Congress committed enforcement decisions to the Commission's discretion, they are not subject to our review.

In *Commission on Hope*, as in this case, CREW relied

heavily on FECA's unusual provision that allows for judicial review of nonenforcement decisions to determine if a dismissal is "contrary to law." 52 U.S.C. § 30109(a)(8)(C); *see also Chamber of Commerce of U.S. v. FEC*, 69 F.3d 600, 603 (D.C. Cir. 1995) (describing FECA's judicial review provision as "unusual in that it permits a private party to challenge the FEC's decision *not* to enforce"). In reconciling FECA's provision of judicial review of actions "contrary to law" with *Chaney*'s holding that judicial review is unavailable for exercises of prosecutorial discretion, we concluded that a Commission nonenforcement decision is reviewable only if the decision rests *solely* on legal interpretation. *See Comm'n on Hope*, 892 F.3d at 441–42. When interpreting FECA, the Commission renders a legal determination "not committed to the agency's unreviewable discretion." *Id.* at 441 n.11. Thus, if the Commission declines an enforcement action "based *entirely* on its interpretation of the statute" such decision might be reviewable. *Id.* (emphasis added). When a Commission decision rests even in part on prosecutorial discretion, however, we cannot review it under the "contrary to law" standard. *Id.* at 440.

In *Commission on Hope* we also explained that FECA provides no legal criteria a court could use to review an exercise of prosecutorial discretion under the "contrary to law" standard. *See id.* at 439. Congress did not limit the Commission's enforcement discretion in FECA by providing specific requirements for the exercise of that discretion and therefore "[n]othing in the substantive statute overcomes the presumption against judicial review." *Id.* We noted that the statute provides the Commission "may" institute a civil action and that the word "'may' imposes no constraints on the Commission's judgment about whether, in a particular matter, it should bring an enforcement action." *Id.* We similarly examined other provisions of FECA and determined the "'statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of

discretion.'" *Id.* (quoting *Chaney*, 470 U.S. at 830).

Our decision in *Commission on Hope* forecloses review of the Commission's nonenforcement decision against New Models. The statement of reasons issued by the controlling Commissioners explicitly relies on prosecutorial discretion. *See* J.A. 133 (citing *Chaney*, 470 U.S. 821). The statement expresses discretionary considerations at the heart of *Chaney*'s holding, such as concerns about resource allocation, the fact that New Models is now defunct and likely judgment proof, and the fact that the events at issue occurred many years prior, leading to potential evidentiary and statute of limitations hurdles. *See Chaney*, 470 U.S. at 831–32 (explaining that enforcement decisions require an agency to "not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all"); *Ass'n of Irritated Residents v. EPA*, 494 F.3d 1027, 1035 (D.C. Cir. 2007) (explaining that nonenforcement decisions "implicate[] a number of factors bearing on the agency's enforcement authority, including policy priorities, allocation of resources, and likelihood of success—and it is the agency's evaluation of those factors that this court should not attempt to review"). The Commission exercised its expertise in weighing these factors, factors courts are ill-equipped to review in the absence of identifiable legal standards. *See Chaney*, 470 U.S. at 831–32 ("The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities.").

As *Commission on Hope* held, FECA provides "no 'law' to apply" in reviewing the Commission's weighing of practical enforcement considerations, so a court has no basis on which to assess whether it is "contrary to law." 892 F.3d at 440. Because the Commission's decision not to enforce against New

Models is grounded in enforcement discretion, it is necessarily unreviewable under the APA and the reasoning of *Chaney*.

The fact that the controlling Commissioners' statement of reasons also provided legal reasons—even lengthy ones—for declining enforcement against New Models does not make the decision reviewable under the "contrary to law" standard. Although such analysis of statutory requirements standing alone may be amenable to judicial review, the Commission's legal analysis here is not reviewable because it is joined with an explicit exercise of prosecutorial discretion. "CREW is not entitled to have the court evaluate for abuse of discretion the individual considerations the controlling Commissioners gave in support of their vote not to initiate enforcement proceedings." *Comm'n on Hope*, 892 F.3d at 441. The Commission's invocation of prosecutorial discretion in this case rested squarely on prudential and discretionary considerations relating to resource allocation and the likelihood of successful enforcement. The Commission offered these reasons in addition to its legal analysis of FECA's "political committee" requirements. *Commission on Hope* leaves no room for us to selectively exercise judicial review based on whether the Commission places more or less emphasis on discretionary factors when declining to pursue enforcement.

CREW attempts to avoid a straightforward application of *Commission on Hope* by arguing that its holding does not extend beyond dismissals "squarely and exclusively based on prosecutorial discretion." CREW Br. 18. And here, CREW argues, rather than resting squarely on enforcement discretion, the Commission engaged in robust analysis and "reached a firm conclusion on the legal question before [it]"—whether New Models was a political committee—and "made only passing reference to prosecutorial discretion … in the concluding paragraph." CREW Br. 15. CREW argues that our statement in *Commission on Hope* that a dismissal is subject to

review only if "based *entirely* on [the Commissioners'] interpretation of the statute," 892 F.3d at 441 n.11 (emphasis added), is dicta and does not bind us here because the statement of reasons in that case relied only on enforcement discretion.

Yet what CREW deems dicta was essential to the holding of *Commission on Hope* because the court rejected the dissent's attempt to carve out the Commission's statutory interpretation from its exercise of enforcement discretion. *Comm'n on Hope*, 892 F.3d at 442 ("The law of this circuit 'rejects the notion of carving reviewable legal rulings out from the middle of non-reviewable actions.'") (citation omitted). Moreover, we have recognized that the Supreme Court has "flatly rejected the principle that if an agency 'gives a reviewable reason for otherwise unreviewable action, the action becomes reviewable.'" *Crowley Caribbean Transp., Inc. v. Peña*, 37 F.3d 671, 676 (D.C. Cir. 1994) (quoting *ICC v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 283 (1987)) (cleaned up); *see also id.* at 675 ("*Chaney* [can]not be evaded by artificially carving out [an] antecedent legal issue from the basic request for enforcement.") (cleaned up).[4] Thus, CREW cannot dodge the longstanding principles recognized in *Commission on Hope*.

The dissent raises similar arguments, focusing on form,

---

[4] It is the nature of the decision not to prosecute that matters, not whether legal interpretation underlay the decision:

> [A] common reason for failure to prosecute an alleged criminal violation is the prosecutor's belief (sometimes publicly stated) that the law will not sustain a conviction. That is surely an eminently "reviewable" proposition, in the sense that courts are well qualified to consider the point; yet it is entirely clear that the refusal to prosecute cannot be the subject of judicial review.

*Bhd. of Locomotive Eng'rs*, 482 U.S. at 283.

not substance. As a matter of law, the dissent does not dispute that the FEC's exercise of prosecutorial discretion is unreviewable, nor does it suggest that we should review the FEC's exercise of prosecutorial discretion. Dissenting Op. 10. Instead, the dissent would do what our precedents say we cannot, namely review the legal analysis that accompanied the Commission's exercise of prosecutorial discretion. To maintain this position, the dissent primarily relies on the length of the Commission's legal analysis and the brevity of its invocation of prosecutorial discretion. *Id.* at *passim.* Yet no matter how many times it is mentioned, the length of the Commission's legal analysis cannot convert the exercise of prosecutorial discretion into a reviewable decision.[5] Here the prosecutorial discretion is exercised *in addition to the legal grounds*. On the dissent's reasoning, perhaps the nonenforcement decision would be unreviewable if the Commission had noted prosecutorial discretion in its introduction; or discussed discretion before the legal analysis; or used more words to invoke discretion; or invoked discretion in a grammatically independent clause. *See id.* at 2, 9–15, 17–19, 21–22. But we have never held that the availability of judicial review turns on an agency's prose composition.

We are unable to review the Commission's exercise of its enforcement discretion, irrespective of the length of its legal analysis. The law of this circuit and of the Supreme Court demonstrates that any factual distinction between the statement of reasons here and in *Commission on Hope* makes no legal difference. The Commission's nonenforcement decision in this case rested on both legal grounds and enforcement discretion,

---

[5] Although we do not consider length dispositive or even particularly relevant, given the dissent's repeated characterization of the invocation of prosecutorial discretion as a mere seven words, *see* Dissenting Op. 2, 9, 10, 18, 21, it should be noted that the controlling Commissioners included nearly 100 words in an accompanying footnote explaining the reasons for exercising prosecutorial discretion. *See* J.A. 133 n.139.

and we again reject CREW's attempt to separate potentially reviewable legal analysis from the Commission's unreviewable exercise of its enforcement discretion. Therefore, we hold that the Commission's nonenforcement decision in this case—just as in *Commission on Hope*—is "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), and shielded from judicial review under *Chaney*, 470 U.S. at 830.

## B.

Declining to review the Commission's exercise of prosecutorial discretion is not only consistent with *Commission on Hope*, but also supported by longstanding precedent. As the Supreme Court explained in *Chaney*, decisions not to take enforcement action have "traditionally been 'committed to agency discretion,' and we believe that the Congress enacting the APA did not intend to alter that tradition." 470 U.S. at 832.[6] The general principle that an agency's exercise of enforcement discretion is unreviewable follows from "tradition, case law, and sound reasoning," as well as protection for a core executive power. *Id.* at 831–32. The vesting of all executive power in the President as well as his constitutional obligation to "take Care that the Laws be faithfully executed," U.S. CONST., art. I, § 1; art. II, § 3, has been understood to leave enforcement and nonenforcement decisions exclusively with the Executive Branch. *See, e.g.*, *Bhd. of Locomotive Eng'rs*, 482 U.S. at 283 ("[I]t is entirely clear that the refusal to prosecute cannot be the subject of judicial review."); *Chaney*, 470 U.S. at 831–32.

---

[6] To determine whether a decision is "committed to agency discretion by law," courts look to (1) the text of the relevant statute, and (2) whether it "involve[s] agency decisions that courts have traditionally regarded as unreviewable." *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 370 (2018). An agency's decision not to enforce is the quintessential decision courts have found committed to agency discretion by law. *See Chaney*, 470 U.S. at 831–32.

"Decisions [whether] to initiate charges … lie at the core of the Executive's duty to see to the faithful execution of the laws." *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016) (cleaned up).

The APA codifies these limits by recognizing that matters committed to agency discretion are not subject to judicial review. *See* 5 U.S.C. § 701(a)(2). Like the decision not to prosecute in criminal cases, the decision not to bring an administrative enforcement action is "committed to agency discretion by law" and therefore unreviewable. *See* 5 U.S.C. § 701(a)(2); *Sec'y of Labor v. Twentymile Coal Co.*, 456 F.3d 151, 157 (D.C. Cir. 2006) ("[T]he traditional nonreviewability of prosecutorial charging decisions [is] applicable to administrative cases."). As we noted in *Commission on Hope*, "[t]here is no doubt the Commission possesses such prosecutorial discretion," and "agency attorneys who bring civil enforcement actions are engaged in 'prosecuting functions.'" 892 F.3d at 438. *See also FEC v. Akins*, 524 U.S. 11, 25 (1998); *3M Co. v. Browner*, 17 F.3d 1453, 1456–57 (D.C. Cir. 1994). Civil enforcement actions are presumptively committed to the agency's discretion, consistent with the Article II power to take care of faithful execution of the laws. *See In re Aiken County*, 725 F.3d 255, 264 n.9 (D.C. Cir. 2013) ("Because they are to some extent analogous to criminal prosecution decisions and stem from similar Article II roots, such civil enforcement decisions brought by the Federal Government are presumptively an exclusive Executive power.") (citing *Buckley v. Valeo*, 424 U.S. 1, 138 (1976)); *Swift v. United States*, 318 F.3d 250, 253 (D.C. Cir. 2003) ("The Constitution entrusts the Executive with [the] duty to 'take Care that the Laws be faithfully executed.' U.S. CONST., art. II, § 3. The decision whether to bring an action on behalf of the United States is therefore 'a decision generally committed to [the government's] absolute discretion' for the reasons spelled out in *Heckler v. Chaney*.") (quoting *Chaney*, 470 U.S. at 831).

The dissent bristles at the "evasion of judicial review," Dissenting Op. 19; however, the APA and longstanding standing precedents rooted in the Constitution's separation of powers recognize that enforcement decisions are not ordinarily subject to judicial review. The dissent does not grapple with these precedents or constitutional principles. Rather, the dissent appears to assume that courts should generally police agency enforcement decisions, which turns our precedents on their head. *See* Dissenting Op. 20 n.6.[7]

The availability of judicial review of enforcement decisions simply does not turn on a sliding scale between law and discretion. *Chaney*, 470 U.S. at 834 (rejecting the claim that judicial review should turn on "pragmatic considerations … that amount to an assessment of whether the interests at stake are important enough to justify [judicial] intervention in the agencies' decisionmaking") (cleaned up). Here, the Commission provided legal analysis and also invoked its enforcement discretion.[8] FECA does not govern how the Commission may exercise its enforcement discretion, and therefore such discretion cannot be subject to judicial review.

---

[7] Moreover, while we have held that some agency nonenforcement decisions are reviewable, the dissent does not cite any exceptions to non-reviewability that are applicable to the Commission's decision in this case. Dissenting Op. 20 n.6 (relying on cases holding that agency nonenforcement decisions may be reviewed if they rest on the agency's erroneous belief that it lacks jurisdiction).

[8] Contrary to the dissent, this case is unlike *Akins*, in which the Commission provided only legal reasons and the Supreme Court could not guess whether the Commission might rely on prosecutorial discretion. Here there is no "doubt," Dissenting Op. 13, because the Commission has told us that it relied on legal reasons "and … prosecutorial discretion." J.A. 133. We take the Commission at its word when it invokes prosecutorial discretion, irrespective of how many words it uses or the structure of its sentences.

Because enforcement discretion is a basis for the Commission's action, we have no grounds to review its statutory analysis.

Finally, if we were to rule on the Commission's statutory interpretation while leaving its discretionary reasons undisturbed, we would risk exceeding our Article III power by issuing an advisory opinion. Because the Commission relied on its unreviewable enforcement discretion as a basis for dismissal, a judicial determination that the Commission's statutory interpretation was "contrary to law" would not affect the Commission's ultimate decision to dismiss. *Cf. Crowley*, 37 F.3d at 676.

\* \* \*

In sum, relying on *Commission on Hope* and longstanding precedent, we hold that the Commission's nonenforcement decision, which rested in part on "prosecutorial discretion," is not subject to judicial review.

## III.

Failing to identify a distinction that would place this case outside the reasoning of *Commission on Hope* and the long line of constitutionally grounded precedent holding that nonenforcement decisions are judicially unreviewable, CREW devotes the lion's share of its briefing to arguing that *Commission on Hope* is wrongly decided. CREW argues that FECA's judicial review provision is directly incompatible with the APA and that *Commission on Hope* cannot be reconciled with other precedents and thus should be discarded under the rule of orderliness. We are of course bound by our previous panel decision in *Commission on Hope*, but we explain why CREW's arguments are unavailing even if we were able to decide this case on a clean slate.

## A.

CREW urges us to adopt the dissenting view in

*Commission on Hope* that FECA's "contrary to law" review of nonenforcement decisions and the APA's "committed to agency discretion by law" standards are incompatible. Yet in *Commission on Hope* we correctly determined that FECA "is consistent with" the APA. 892 F.3d at 437.

CREW maintains that FECA effectively supersedes the APA's bar on judicial review of matters committed to agency discretion. Yet FECA cannot alter the APA's limitation on judicial review unless it does so expressly. 5 U.S.C. § 559 (providing that a "[s]ubsequent statute may not be held to supersede or modify this subchapter … except to the extent that it does so expressly"). The APA imposes a high bar, met only if "Congress has established procedures so clearly different from those required by the APA that it must have intended to displace the norm." *Asiana Airlines v. FAA*, 134 F.3d 393, 397 (D.C. Cir. 1998). FECA's procedures are entirely compatible with the APA, which both allows for judicial review to determine whether agency action is contrary to law and bars judicial review of matters committed to agency discretion, such as enforcement decisions. In FECA, Congress adopted a "contrary to law" standard that mirrors the APA, which requires courts to set aside agency action that is "otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). And the Supreme Court has long held that the APA provision "not in accordance with law" does not divest agencies of enforcement discretion, which is "committed to agency discretion by law." *See, e.g.*, *Chaney*, 470 U.S. at 837–38. Similarly, FECA's provision for judicial review of nonenforcement decisions "contrary to law" does not displace the traditional unreviewability of the Commission's discretionary decisions not to enforce.

To be sure, the traditional principle barring judicial review of discretionary executive actions, recognized in Section 701(a)(2), may yield when Congress "has indicated an intent to circumscribe agency enforcement discretion, and has

provided meaningful standards for defining the limits of that discretion." *Id.* at 834. Thus, the presumption of unreviewability "may be rebutted where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." *Id.* at 832–33. Under this standard, we analyze the relevant statute to determine whether it displaces prosecutorial discretion by providing for a specific standard the agency must apply in its enforcement decisions.[9] *Drake v. FAA*, 291 F.3d 59, 70 (D.C. Cir. 2002) ("In determining whether a matter has been committed solely to agency discretion, we consider both the nature of the administrative action at issue and the language and structure of the statute that supplies the applicable legal standards for reviewing that action.").

FECA does not withdraw prosecutorial discretion from the Commission or provide substantive criteria to guide such discretion. As we have long held, "judicial review of the Commission's refusal to act on complaints is limited to correcting errors of law." *CREW v. FEC* ("*CREW/Norquist*"), 475 F.3d 337, 340 (D.C. Cir. 2007). FECA does not set substantive enforcement priorities nor does it establish standards to guide enforcement discretion. *Cf. Swift*, 318 F.3d at 253 (citing *Chaney*, 470 U.S. at 833). Moreover, the actual decision under review here—the Commission's decision not to institute an enforcement action—is explicitly vested in the Commission's discretion: "[T]he Commission *may*, upon an affirmative vote of 4 of its members, institute a civil action." 52 U.S.C. § 30109(a)(6)(A) (emphasis added). *Cf. Balt. Gas & Elec. Co. v. FERC*, 252 F.3d 456, 461 (D.C. Cir. 2001) ("If Congress had intended to cabin FERC's enforcement discretion, it could have used obligatory terms such as 'must,'

---

[9] Because FECA provides no such standards, we need not consider the Article II limits on Congress's power to establish legal criteria for enforcement decisions or to subject such legal criteria to judicial review.

'shall,' and 'will,' not the wholly precatory language it employed in the act."). FECA provides only that nonenforcement decisions made "contrary to law" may be subject to judicial review. Standing alone this provision does not provide a legal standard for judicial review of discretionary decisions, which, by definition, are not based on "law" and therefore cannot be reviewed under the "contrary to law" standard.

CREW offers various structural and purposive arguments to rebut this conclusion. First, it relies heavily on the "bipartisan structure" of the Commission to argue that four commissioners must concur not only in enforcement actions, but also in nonenforcement actions. CREW argues that "[w]here four votes are unavailable for any option, *nothing* happens—neither an investigation nor a dismissal—until a bipartisan coalition of four commissioners can come to an agreement." CREW Br. 28. This argument, however, is unsupported by the text of FECA, which clearly states that four members are necessary only "to initiate," "defend," "or appeal any civil action." 52 U.S.C. § 30107(a)(6). The statute specifically enumerates matters for which the affirmative vote of four members is needed and dismissals are not on this list,[10] which suggests that they are not included under the standard construction that *expressio unius est exclusio alterius*. A decision to initiate enforcement, but not to decline enforcement, requires the votes of four commissioners.

CREW's argument to add to the list of matters requiring

---

[10] "All decisions of the Commission with respect to the exercise of its duties and powers under the provisions of this Act shall be made by a majority vote of the members of the Commission … except that the affirmative vote of 4 members of the Commission shall be required in order for the Commission to take any action in accordance with paragraph (6), (7), (8), or (9) of section 30107(a) of this title." 52 U.S.C. § 30106(c). None of the referenced paragraphs include dismissal of an enforcement action.

four commissioners also runs against FECA's general rule that the Commission must make decisions by majority vote. *See* 52 U.S.C. § 30106(c). CREW's purposivist policy arguments cannot override the unambiguous text, nor can they be reconciled with our previous cases, which have recognized the possibility of "deadlock dismissals," namely dismissals resulting from the failure to get four votes to proceed with an enforcement action. *Common Cause v. FEC*, 842 F.2d 436, 449 (D.C. Cir. 1988); *see also Democratic Cong. Campaign Comm. v. FEC* ("*DCCC*"), 831 F.2d 1131, 1133 (D.C. Cir. 1987) (noting the possibility of judicial review of "a dismissal due to a deadlock").

Second, CREW maintains that *Commission on Hope* "renders the possibility of a contrary to law judgment essentially impossible" because the controlling Commissioners can invoke enforcement discretion to secure an "unreviewable veto over private enforcement." CREW Br. 34. FECA, however, conditions the availability of a citizen suit on a series of triggering conditions, including a court determination that the Commission acted "contrary to law." Despite CREW's assertions, the citizen suit provision remains fully operative when the agency has declined to act based on legal reasons that a court can review under the "contrary to law" standard. *See Orloski v. FEC*, 795 F.2d 156, 161 (D.C. Cir. 1986). Indeed, since *Commission on Hope*, the Commission has continued to dismiss matters based solely on judicially reviewable legal determinations.[11] That FECA does not allow courts to also review dismissals based on enforcement discretion is simply a function of the "contrary to law" standard.

Third, CREW argues that "Congress expressly provided for judicial review of FEC dismissals," meaning *Chaney* does

---

[11] *See, e.g.*, Matter Under Review ("MUR") 7309/7399 (Crowdpac, Inc.) (June 7, 2019), https://www.fec.gov/files/legal/murs/7309/19044417414.pdf (rejecting complaint because entity was not a political committee).

not apply, and *Commission on Hope* improperly "overrule[d] Congress." CREW Br. 41. To support this argument, CREW relies on two provisions of FECA directing that the Commission "*shall* make an investigation" if it determines there is "reason to believe" a violation occurred, 52 U.S.C. § 30109(a)(2) (emphasis added), and "*shall* attempt … to correct or prevent such violation" "if the Commission determines … that there is probable cause," *id.* § 30109(a)(4)(A)(i) (emphasis added). These provisions, CREW argues, "rebut the presumption of unreviewability." CREW Br. 39 (cleaned up).

These two mandatory duties, however, are predicated on a threshold determination over which the agency retains its traditional enforcement discretion: "an affirmative vote of 4 of its members" that there is "reason to believe" a violation has occurred. *Id.* § 30109(a)(2); *id.* § 30109(a)(6)(A) ("[T]he Commission *may* … institute a civil action.") (emphasis added). Only after four commissioners make this discretionary decision "shall" the Commission "make an investigation." *Id.* § 30109(a)(2). FECA's mandatory duties do not "constrain the Commission's discretion whether to make those legal determinations in the first instance." *Comm'n on Hope*, 892 F.3d at 439. The mandatory "shall" regarding the Commission's obligation to open an investigation stands in contrast to the discretionary "may" describing the Commission's determination to proceed with enforcement in the first place. *Cf. Comm'n on Hope*, 892 F.3d at 451 (Pillard, J., dissenting) ("[T]he Commission enjoys ultimate non-enforcement discretion: It is the Commissioners' option whether to institute a civil action in court."). The obligations that follow a discretionary decision to proceed with enforcement cannot somehow transform the enforcement decision into a mandatory one.

CREW's arguments strain to read a conflict between FECA and the APA, an interpretation at odds with our usual

presumption against implied repeals. *See Branch v. Smith*, 538 U.S. 254, 273 (2003) (plurality opinion) ("[A]bsent a clearly expressed congressional intention, repeals by implication are not favored.") (cleaned up). Nothing in FECA, however, expressly overrides the APA's preclusion of judicial review for decisions committed to an agency's discretion. Moreover, "contrary to law" review under FECA simply mirrors "not in accordance with law" review under the APA. *Compare* 52 U.S.C. § 30109(a)(8)(C), *with* 5 U.S.C. § 706(2)(A). Thus, judicial review under the "contrary to law" standard is available for nonenforcement decisions that turn entirely on the Commission's legal interpretation, but the APA's limit on judicial review remains operative for decisions based on enforcement discretion. Given the complexity and breadth of our legal code, when fairly possible judges should seek coherence between different statutory schemes. *Cf. FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (instructing courts to interpret a statute in the context of other laws to ensure "a symmetrical and coherent regulatory scheme" and because "the meaning of one statute may be affected by other Acts") (cleaned up). In light of the text and structure of the two statutes, as well as underlying constitutional considerations, FECA and the APA readily coexist.

B.

In a final attempt to circumvent *Commission on Hope*, CREW contends that the decision cannot be reconciled with the law of this circuit or the Supreme Court, and therefore we are bound to follow the earlier decisions and abandon our recent holding in *Commission on Hope*.

We are generally not at liberty to relitigate the merits of earlier decisions, as "one panel cannot overrule another." *United States v. Eshetu*, 898 F.3d 36, 37 (D.C. Cir. 2018). When faced with a claim of conflicting precedents, we must whenever possible harmonize later decisions with existing

authorities to avoid creating unnecessary conflicts. *See United States v. Old Dominion Boat Club*, 630 F.3d 1039, 1045 (D.C. Cir. 2011) (cautioning against "too readily discard[ing] a later precedent that distinguished—or is distinguishable from—an earlier decision"). *Commission on Hope* readily conforms with our earlier cases. The cases CREW points to—*Akins*, *DCCC*, *Chamber of Commerce*, and *Orloski*—establish three principles. First, private parties may possess standing to challenge Commission decisions not to act. Second, the controlling Commissioners must provide a statement of reasons when there are not sufficient votes to commence an enforcement action. Third, a decision not to enforce is reviewable if based on the Commission's legal interpretation. Contrary to CREW's assertions, the legal principles articulated by these and other cases support *Commission on Hope*'s holding that Commission decisions based even in part on enforcement discretion are not reviewable.

First, courts have held that private parties possess standing to challenge Commission decisions not to act. In *Akins*, the Supreme Court held that a party had Article III standing to challenge a Commission nonenforcement decision when that decision was based upon an "agency misinterpret[ation of] the law." 524 U.S. at 25. Similarly, we held in *Chamber of Commerce* that a party had standing to bring a preenforcement challenge to the constitutionality of a Commission regulation. 69 F.3d at 603. Because the Chamber raised a First Amendment challenge, preenforcement review was appropriate, and we concluded that the Commission's argument against standing was "rather weak and easily reject[ed] it." *Id.* at 604. These cases stand for the narrow proposition that a private party may have standing to challenge Commission nonenforcement decisions.

That a party may have standing to challenge some Commission nonenforcement decisions does not mean that courts may review all Commission nonenforcement decisions.

Even when a party has standing to challenge an action, judicial review may be separately barred if the agency's decision is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *see, e.g.*, *Sierra Club*, 648 F.3d at 854, 856–57 (finding that although Sierra Club's challenge was not moot, the agency's discretionary decision was not justiciable under Section 701(a)(2) of the APA). Unlike the Commission's decision in this case, in *Akins* and *Chamber of Commerce*, the Commission did not invoke enforcement discretion as a basis for dismissal, and so the court had no reason to consider whether such an invocation would bar judicial review. Indeed, the *Akins* Court expressly acknowledged the possibility that "even had the FEC agreed with respondents' view of the law, it [may] still have decided *in the exercise of its discretion* not to" proceed with enforcement. *Akins*, 524 U.S. at 25 (emphasis added). Because the Commission based its decision entirely on legal grounds, the Court "[could not] know that the FEC would have exercised its prosecutorial discretion in this way." *Id.* Thus, prosecutorial discretion did not shield the Commission's decision from judicial review in *Akins* because the Commission had not relied on it. The Commission decisions in *Akins* and *Chamber of Commerce* simply did not include an exercise of nonenforcement discretion. By contrast, here, as in *Commission on Hope*, the Commission explicitly exercised its "prosecutorial discretion" when dismissing the action.

The second principle that emerges from our precedents is that the Commission must provide a statement of reasons explaining dismissal of a complaint. In *DCCC*, we determined that deadlocked decisions could be subject to judicial review to determine if the Commission was acting "contrary to law." 831 F.2d at 1132. Although we rejected the Commission's assertion that unexplained deadlocked dismissals are *per se* unreviewable because they reflect nothing more than an exercise of "prosecutorial discretion," *id.* at 1133–34, we did not "answer … for all cases" the question of whether a Commission dismissal due to deadlock is "amenable to judicial

review," *id.* at 1132. Instead, we focused on the facts of that case, noting the Commission "may have" acted contrary to law. *Id.* at 1135; *see also Common Cause*, 842 F.2d at 449 ("A statement of reasons, in either situation, is necessary to allow meaningful judicial review of the Commission's decision not to proceed."). Neither *DCCC* nor *Common Cause* has anything to say about the ultimate reviewability of a nonenforcement decision when the controlling Commissioners provide a statement of reasons explaining the dismissal turned in whole or in part on enforcement discretion.

Third, the cases cited by CREW establish that a Commission decision to dismiss a complaint is reviewable if based solely on a finding that an entity did not violate the law. In *Orloski*, the Commission decided not to pursue enforcement in a case in which it determined that there was "no reason to believe that the Act had been violated." 795 F.2d at 160 (cleaned up). The Commission's analysis relied exclusively on an interpretation of the relevant statutory and regulatory standards—with no mention of enforcement discretion. Faced with only legal arguments for nonenforcement, we explained that the Commission's decision not to enforce is "'contrary to law' if (1) the FEC dismissed the complaint as a result of an impermissible interpretation of the Act, … or (2) if the FEC's dismissal of the complaint, *under a permissible interpretation of the statute*, was arbitrary or capricious, or an abuse of discretion." *Id.* at 161 (emphasis added). *Orloski* recognizes first the established principle that courts may review an agency's statutory interpretation. "The interpretation an agency gives to a statute is not committed to the agency's unreviewable discretion." *Comm'n on Hope,* 892 F.3d at 441 n.11. And second, *Orloski* recognizes the Commission cannot apply an otherwise permissible interpretation of FECA in an unreasonable way—which is the same review that courts regularly conduct under Section 706 of the APA. *See* 5 U.S.C. § 706(2)(A) (directing courts to "hold unlawful and set aside agency action" that is "arbitrary, capricious, [or] an abuse of

discretion"). In other words, for either of the alternative conditions articulated in *Orloski* to apply, the Commission must have based its dismissal decision squarely on its legal interpretation.

CREW tries to expand the "abuse of discretion" standard here to include judicial review of decisions that rest on enforcement discretion. Yet in *Orloski*, we were not confronted with a situation in which the Commission relied on enforcement discretion, and we explicitly stated that "abuse of discretion" review occurs in the application of an otherwise "permissible interpretation of the statute." 795 F.2d at 161. This statement echoed *Chaney*'s conclusion that nonenforcement decisions may be reviewed for abuse of discretion only when there is "law to apply." 470 U.S. at 834–35. Contrary to CREW's assertions, *Orloski* nowhere hints that a dismissal decision based on enforcement discretion would be reviewable. *Orloski* follows from *Chaney* and is perfectly consistent with *Commission on Hope*.

In *Akins* the Court similarly emphasized that the reviewability of the Commission's action depended on the existence of a legal ground of decision: "Agencies often have discretion about whether or not to take a particular action. Yet those adversely affected by a discretionary agency decision generally have standing to complain that the agency based its decision upon an *improper legal ground*." *Akins*, 524 U.S. at 25 (emphasis added). In this vein, the Court noted that agency action will be set aside "[i]f a reviewing court agrees that the agency misinterpreted *the law*." *Id.* (emphasis added). Far from holding that every Commission nonenforcement decision can be challenged as "contrary to law" under FECA, "[t]he Supreme Court in *Akins* recognized that the Commission, like other Executive agencies, retains prosecutorial discretion." *CREW/Norquist*, 475 F.3d at 340. Likewise, in *DCCC* the Commission did not claim that its decision rested on enforcement discretion. Indeed, as we explained one year later,

"*DCCC* sought simply to assure meaningful judicial review *under the 'contrary to law' standard*." *Common Cause*, 842 F.2d at 449 n.33 (emphasis added). The Commission's decision here explicitly relies on enforcement discretion—discretion that turns on practical concerns about agency resources and the viability of an enforcement claim. Such discretion does not turn on legal grounds and therefore is not judicially reviewable under FECA's "contrary to law" standard.

Although CREW attempts to treat *Commission on Hope* as an outlier, the foregoing demonstrates that *Commission on Hope* follows from and fits within our precedents. Furthermore, a review of the cases demonstrates that it is CREW's expansive interpretation of FECA's judicial review provision—not *Commission on Hope*—that is out of step with both binding precedent and the Constitution's system of separated powers. Interpreting FECA's "contrary to law" provision and our earlier precedents to require judicial review in this case would run afoul of an unbroken line of circuit and Supreme Court precedent establishing that courts cannot review discretionary nonenforcement decisions.

\* \* \*

Because the Commission relied on prosecutorial discretion when dismissing the complaint against New Models, the dismissal is not subject to judicial review. We cannot accept CREW's invitation to ignore our recent decision in *Commission on Hope* and turn our back on longstanding precedents that are grounded in Article II of the Constitution and the APA's bar on judicial review of decisions committed to agency discretion by law. We therefore affirm the district court's grant of summary judgment to the Commission.

*So ordered.*

MILLETT, *Circuit Judge*, dissenting: The question in this case is whether a federal agency can immunize its conclusive legal determinations and evidentiary analyses from judicial review simply by tacking a cursory reference to prosecutorial discretion onto the end of a lengthy and substantive merits decision. In holding that such an incantation precludes all scrutiny, the majority opinion creates an easy and automatic "get out of judicial review free" card for the Federal Election Commission. That should not be the law of this circuit.

In this case, a deadlocked Federal Election Commission dismissed a complaint filed by Citizens for Responsibility and Ethics in Washington. In so doing, the Commission devoted 31 single-spaced pages and 138 footnotes to a full-throated analysis of the legal question whether an entity known as New Models was a "political committee" within the meaning of the Federal Election Campaign Act, 52 U.S.C. § 30101(4). Applying its thoroughgoing legal analysis, the Commission's decision concluded that, "[b]ased on our review of the evidence in the record, New Models is an organization that made permissible contributions to independent expenditure-only political committees." J.A. 133. The Commission added that "New Models's organizational purpose, tax exempt status, public statements, and overall spending evidence an issue discussion organization, not a political committee having the major purpose of nominating or electing candidates." J.A. 133. "As a result," the Commission concluded, New Models "cannot (nor should it) be subject to the 'pervasive' and 'burdensome' requirements of registering and reporting as a political committee." J.A. 133. "For these reasons," the Commission explained, "we voted against finding reason to believe that New Models violated the Federal Election Campaign Act by failing to register and report as a political committee," and dismissed the matter. J.A. 133.

Under the plain statutory text and well-settled precedent, that type of decision falls squarely within the Federal Election

Campaign Act's provision for judicial review. *See*, *e.g.*, *Campaign Legal Ctr. & Democracy 21 v. FEC*, 952 F.3d 352, 356–357 (D.C. Cir. 2020) (per curiam) (citing 52 U.S.C. § 30109(a)(8)(C)).

Yet, according to the majority opinion, all of that changes because the Commission's decision tossed a dependent clause with seven magic words into the final sentence of its statement: "For these reasons''—that is, the preceding 31 pages—"*and in exercise of our prosecutorial discretion*, we voted against finding reason to believe that New Models violated the Act by failing to register and report as a political committee and to dismiss the matter." J.A. 133 (emphasis added). The majority opinion holds that, with a wave of that verbal wand, the Commission extricated its final decision from all statutorily authorized judicial review and inoculated the entirety of the preceding legal analysis, determinations, and conclusions from judicial scrutiny. Even though those 31 pages of robust legal analysis constitute the Commission's final agency decision disposing of the New Models matter.

In other words, under the majority opinion, whether the words are inserted by the controlling commissioners in a deadlocked vote or by a majority of the full Commission, a final agency decision becomes unreviewable with just a rhetorical wink at prosecutorial discretion. Because I do not believe that a statutory provision for judicial review can be so easily nullified and final agency action so facilely shielded from scrutiny, I respectfully dissent.

# I

## A

The Federal Election Campaign Act, 52 U.S.C. § 30101 *et seq.*, seeks to prevent the corruption of federal officials, or the

appearance of such corruption, based on monetary contributions. *See FEC v. Beaumont*, 539 U.S. 146, 154 (2003). Congress tasked the Federal Election Commission with "administer[ing]" and "seek[ing] to obtain compliance with" the Act, 52 U.S.C. § 30106(b)(1).

Any person who believes that a violation of the Federal Election Campaign Act has occurred may file an administrative complaint with the Commission. 52 U.S.C. § 30109(a)(1). If at least four commissioners find that there is "reason to believe" the accused person or entity violated the Act, the Commission is required to investigate the alleged violation. *Id.* § 30109(a)(2).[1]

If the Commission does not find "reason to believe," it typically dismisses the administrative complaint. But a party that is "aggrieved by an order of the Commission dismissing" its administrative complaint may seek review of the Commission's order in the United States District Court for the District of Columbia. 52 U.S.C. § 30109(a)(8)(A). The district court "may declare that the dismissal of the complaint or the failure to act is contrary to law, and may direct the Commission to conform with such declaration within 30 days[.]" *Id.* § 30109(a)(8)(C). A dismissal is "contrary to law" if, among other things, the Commission relied upon an impermissible construction of the Act or if the dismissal was otherwise

---

[1] If, after that investigation, four or more commissioners conclude that there is "probable cause" to believe the accused violated the Act, the Commission must attempt to "correct or prevent such violation by informal methods of conference, conciliation, and persuasion[.]" 52 U.S.C. § 30109(a)(4)(A)(i). If these conciliatory efforts fail, the Commission "may, upon an affirmative vote of [four] of its members, institute a civil action for relief" in federal district court. *Id.* § 30109(a)(6)(A).

4

arbitrary, capricious, or an abuse of discretion.  *Orloski v. FEC*, 795 F.2d 156, 161 (D.C. Cir. 1986).  If the Commission refuses to conform to that order, the complainant may bring a private civil action to remedy the violation alleged in its administrative complaint.  52 U.S.C. § 30109(a)(8)(C).

**B**

In September 2014, Citizens for Responsibility and Ethics in Washington ("CREW") filed an administrative complaint with the Commission alleging that New Models, a nonprofit organization, had violated the Act by failing to register as a political committee and to submit to the Commission the disclosures required by that status.  *See* 52 U.S.C. §§ 30102–30104; *see also id.* § 30101(4) (defining "political committee").  The Commission's General Counsel recommended that the Commission find "reason to believe" that New Models had broken the law by failing to register and report as a political committee in 2012.  The General Counsel pointed to evidence that, in the election year at issue, New Models had contributed 68.5% of its annual spending—nearly $3.1 million—to "independent expenditure-only political committees" that supported federal campaign activity.  After New Models failed to rebut that evidence, the General Counsel urged the Commission to authorize an investigation.

The then-five-person Commission split 2–2, with one recusal, on the "reason to believe" vote.  Commissioners Walther and Weintraub agreed with the General Counsel, voting to find reason to believe that New Models had violated the Act by failing to register and report as a political committee.  Commissioners Goodman and Hunter voted against such a finding.  In light of the deadlock, all four non-recused Commissioners voted to dismiss the case.

When, as here, a deadlocked Commission fails to follow the General Counsel's recommendation, those who voted to reject that recommendation—often referred to as the "controlling commissioners"—determine the final position of the Commission on the matter, and "must provide a statement of their reasons for so voting." *FEC v. National Republican Senatorial Comm.*, 966 F.2d 1471, 1476 (D.C. Cir. 1992) (citing *Democratic Cong. Campaign Comm. v. FEC*, 831 F.2d 1131, 1133–1135 (D.C. Cir. 1987)). That is because the statute expressly provides for judicial review of dismissal decisions, and "we resist confining the judicial check to cases in which * * * the Commission acts on the merits." *Democratic Cong. Campaign Comm.*, 831 F.2d at 1134 (formatting modified).

All that means that the members who voted against proceeding further (here, Commissioners Goodman and Hunter) established the official position of the Commission on the New Models matter and definitively foreclosed further action against New Models on CREW's complaint. *See In re Sealed Case*, 223 F.3d 775, 780 (D.C. Cir. 2000); *National Republican Senatorial Comm.*, 966 F.2d at 1476.

Speaking for the Commission, Controlling Commissioners Goodman and Hunter issued an extended Statement of Reasons explaining why they found no reason to believe that New Models had violated the statute. They began by summarizing their position, reasoning that "[t]his agency's controlling statute and court decisions stretching back over forty years properly tailor the applicability of campaign finance laws to protect non-profit issue advocacy groups" from the Federal Election Campaign Act's registration and reporting requirements. J.A. 103. Those protections continue, the Commissioners explained, even if the issue advocacy organization "mak[es] incidental or occasional campaign contributions." J.A. 103. As a result of that reading of the

statute, the Commissioners concluded that organizations like New Models only qualify as political committees if their "'major purpose' is the nomination or election of federal candidates." J.A. 103.

Discerning "major purpose," the Commissioners next explained, "requires a comprehensive, case-specific inquiry that focuses on the organization's public statements, organizational documents, and overall spending history." J.A. 103. The Commissioners then summed up the results of their comprehensive consideration of the law and the evidentiary record:

> Applying our case-by-case analysis and agency expertise to the facts in the record, and consistent with numerous court decisions applying the major purpose test, we concluded that New Models's major purpose was not the nomination or election of federal candidates over the course of its existence, that New Models's major purpose did not change to become the nomination or election of federal candidates based upon its contributions to political committees in one calendar year, and that New Models was not a political committee. Accordingly, we voted against finding reason to believe that New Models violated the Act.

J.A. 104.

The Commissioners then laid out the factual and procedural background of the case, noting that the Commission's General Counsel had recommended that the Commission find reason to believe that New Models violated the Act by failing to register as a political committee in an election year in which it had donated 68.5% of its spending to political committees. J.A. 105; *see also* J.A. 104–109

7

(detailing the evidentiary record, including charts documenting fifteen years of New Models' revenue and spending).

The Commissioners also addressed various evidentiary disputes, none of which they found sufficient to "change [their] determination that New Models is not a political committee." J.A. 108 n.23; *see also* J.A. 108 n.24 (explaining that even a $5,000 contribution to a political action committee "does not alter our conclusion as to New Models's status").

The Commissioners then laid out the statutory and precedential background pertaining to the "political committee" question, discussing both judicial and Commission precedent. J.A. 109–120.

In Section IV of the Statement of Reasons, the Commissioners laid out their "**ANALYSIS OF NEW MODELS' MAJOR PURPOSE**," and stated their bottom-line conclusion: "[U]pon thorough consideration of various facts indicative of political committee status: organizational documents, public statements of purpose, tax status, and independent spending, we do not have reason to believe that New Models met the threshold of receiving" the requisite contributions or making the required expenditures under the first prong of the political committee test, "or that New Models had the major purpose of nominating or electing federal candidates under the second prong." J.A. 120.

They then proceeded through a detailed and protracted analysis applying the "political committee" criteria and legal precedent to the evidentiary record of New Models' expenditures and contributions. The Commissioners explained that there were "two independent grounds" for their conclusion that the available evidence did not support finding reason to believe that New Models is a political committee. J.A. 122 n.95. First, "New Models did not cross the statutory threshold

of $1,000 in contributions received or expenditures made," and second, New Models' "major purpose is not nominating or electing federal candidates." J.A. 122 n.95.

The analysis supporting those two independent judgments includes detailed sections determining that:

- "New Models has not met the statutory threshold for political committee status";

- "There is no reason to believe New Models has the major purpose for political committee status";

- "New Models' central organizational purpose focused on public policy and issues, not federal candidates";

- "New Models' public statements do not indicate that its major purpose was the nomination or election of federal candidates"; and

- "New Models' independent spending demonstrates its major purpose was not the nomination or election of a federal candidate[.]"

J.A. 120–133 (some capitalization omitted).

The Commissioners then summarized their determinations and findings:

> Based on our review of the evidence in the record, New Models is an organization that made permissible contributions to independent expenditure-only political committees. These occasions were irregular, occurring in 2010 and 2012 and totaled less than 20%

of the organization's total lifetime expenses.[2] As the 2007 Supplemental [Explanation and Justification] made clear, however, to be considered a political committee under the Act, the nomination or election of a candidate must be the major purpose of the organization. Here, New Models's organizational purpose, tax exempt status, public statements, and overall spending evidence an issue discussion organization, not a political committee having the major purpose of nominating or electing candidates. As a result, it cannot (nor should it) be subject to the "pervasive" and "burdensome" requirements of registering and reporting as a political committee.

J.A. 133.

After all of that, the Commissioners added one final, concluding sentence: "For these reasons, and in exercise of our prosecutorial discretion, we voted against finding reason to believe that New Models violated the Act by failing to register and report as a political committee and to dismiss the matter." J.A. 133 (footnote omitted).

The only reference to prosecutorial discretion appearing anywhere in the entire 31 pages was that fleeting reference in a dependent clause in the last sentence on the last page. Just seven out of more than 14,500 words. The Commissioners then appended a brief footnote adding that, "[g]iven the age of the

---

[2] The year before the Commission's decision in this case, a federal district court ruled that the Commission's singular focus on a particular organization's lifetime spending, rather than its spending in the year in question, was contrary to law. *Citizens for Resp. & Ethics in Wash. v. FEC*, 209 F. Supp. 3d 77, 93–94 (D.D.C. 2016); *see also* J.A. 135–137 (statement of Commissioner Weintraub).

activity and the fact that the organization appears no longer active, proceeding further would not be an appropriate use of Commission resources." J.A. 133 n.139 (citing *Heckler v. Chaney*, 470 U.S. 821 (1985); 28 U.S.C. § 2462 (five-year statute of limitations); *Nader v. FEC*, 823 F. Supp. 2d 53, 65–66 (D.D.C. 2011)). That's it.

## II

### A

The majority opinion's central rationale for affirming the dismissal of CREW's administrative complaint is that exercises of prosecutorial discretion are "generally unreviewable[.]" Majority Op. 2. To that end, the majority opinion devotes pages to revering the unobjectionable principle that exercises of prosecutorial discretion and other non-enforcement decisions are generally not subject to reexamination by the courts. *See* Majority Op. 12–15.

Yet no one disputes that. My point is not that this court should try to review the seven-word phrase referencing prosecutorial discretion.

Instead, the question in this case is whether the Commissioners' 31 single-spaced pages and 138 footnotes of decisional analysis, complete with detailed findings and legal determinations, can be reviewed by a court. Statutory text and precedent confirm that the answer is yes.

First, the Federal Election Campaign Act specifically provides for review of a decision to dismiss. The statute expressly authorizes—without qualification—judicial scrutiny of a Commission decision "dismissing a complaint" to ensure that the decision is not "contrary to law." 52 U.S.C. § 30109(a)(8)(A) & (C).

That type of review of non-enforcement decisions, admittedly, is unusual. After all, agency decisions not to pursue enforcement are "general[ly] unsuitabl[e]" for judicial review. *Chaney*, 470 U.S. at 831. But "generally" does not mean always. That presumption, like all other presumptions, can be rebutted. *See id.* at 832–833. And as the Supreme Court has recognized, the Federal Election Campaign Act does just that. *See FEC v. Akins*, 524 U.S. 11, 26 (1998). The Act "permits a private party to challenge the [Commission's] decision *not* to enforce." *Chamber of Commerce v. FEC*, 69 F.3d 600, 603 (D.C. Cir. 1995). More specifically, the Act expressly authorizes review of the Commission's dismissal of a complaint or failure to act on a complaint to determine if the agency acted "contrary to law." 52 U.S.C. § 30109(a)(8)(C); *see Akins*, 524 U.S. at 26 ("In [*Chaney*], this Court noted that agency enforcement decisions 'have traditionally been committed to agency discretion,'" but "[w]e deal here with a statute that explicitly indicates to the contrary.") (formatting modified).

Given that clear congressional instruction, the majority opinion agrees that courts must review non-enforcement decisions by the Commission when they are fully grounded in "legal determination[s]." Majority Op. 7. Which is what we have here: 31 solid, single-spaced pages and 14,500 words—longer than a Supreme Court merits brief, S. Ct. R. 33(g)(v) & (vi)—documenting and explaining the Commission's final legal determinations regarding the New Models matter.

Second, our precedent also establishes the reviewability of the Commissioners' legal rulings that form the basis for a non-enforcement decision. *See, e.g., National Republican Senatorial Comm.*, 966 F.2d at 1476 ("[W]hen the Commission deadlocks 3–3 and so dismisses a complaint, that dismissal, like any other, is judicially reviewable[.]"). Notably, in

*Democratic Congressional Campaign Committee*, we expressly rejected the Commission's argument that its deadlocks were "immunized from judicial review" as "simpl[e] exercises of prosecutorial discretion." 831 F.2d at 1133–1134. We held instead that the controlling commissioners were legally obligated to provide an explanation that would allow the court to evaluate "whether reason or caprice determined the dismissal[.]" *Id.* at 1135.

Neither the majority opinion nor the Commission disputes the obligation of controlling commissioners to explain their reasoning. And neither argues that statements of reasons, which constitute the rationale for the Commission's final action, are categorically immune from judicial review. Instead, both the majority opinion and the Commission read our precedent as empowering controlling commissioners to turn that statutorily directed judicial review off like a light switch just by burying the assertion that the dismissal was "simply [an] exercise[] of prosecutorial discretion" somewhere in their substantive and merits-based statement of reasons. *Democratic Cong. Campaign Comm.*, 831 F.2d at 1133.

Third, the Commissioners' stray reference to prosecutorial discretion does not change the reviewability of their weighty legal determinations. On its face, the Commissioners' decision does two things. Ninety-nine percent of the decision lays out an extensive legal and evidentiary analysis replete with express statements as to what was "concluded" and "conclusion[s]," "finding[s]," "determination[s]," "thorough consideration of various facts," interpretations of precedent, and articulation of policy rationales, all of which lead ultimately to "the Commission's rationale for not finding reason to believe" that New Models violated the statute. J.A. 104; J.A. 106; J.A. 108 & nn.23–24; J.A. 112–114; J.A. 120; J.A. 127 n.114; J.A. 129–

133. And then a dependent clause adds a reference to prosecutorial discretion. J.A. 133.

Tellingly, the Commissioners' 31-page "no reason to believe" determination preceded, and did not include any reference to, an exercise of prosecutorial discretion. The Commissioners were explicit that their decision about New Models' statutory status was based on "two independent grounds": (1) "New Models did not cross the statutory threshold of $1,000 in contributions received or expenditures made[,]" and (2) New Models' "major purpose is not nominating or electing federal candidates." J.A. 122 n.95. "Each ground," the Commissioners underscored, "is *independently sufficient to substantiate our conclusion*." J.A. 123 n.95 (emphasis added).

While the Commission stressed that its two *substantive* legal reasons were both "independently sufficient" for dismissal, J.A. 123 n.95, it made no similar claim about its invocation of prosecutorial discretion. And the fleeting reference to prosecutorial discretion appears only after the Commissioners repeatedly articulated their "independently sufficient" legal grounds for not finding reason to believe a violation had occurred, J.A. 123 n.95. So the claim of prosecutorial discretion presents itself as an apparent afterthought tossed in after the preceding, comprehensive "no reason to believe" judgment had already been made by the Commissioners. In other words, it is unknown whether the Commission viewed its invocation of prosecutorial discretion as just one more consideration to support the conclusion that it had already reached. In the presence of doubt, the Supreme

Court has ruled that courts should let the agency speak to the matter first. *See Akins*, 524 U.S. at 25.[3]

At a minimum, it is not at all clear on this record that the Commissioners would dismiss this case on prosecutorial-discretion grounds alone, given all the ink they spilled analyzing and explaining their two other "independently sufficient" legal and evidentiary determinations, J.A. 123 n.95. Nor does the record remotely show that the Commissioners would reach the same prosecutorial judgment if judicial review exposed error in their "reason to believe" analysis. Quite the opposite, the relevance of New Models just "appear[ing] no longer active," J.A. 133 n.139, is unexplained. And the Commission now hedges its bets on the statute-of-limitations rationale.[4]

To be sure, "it is possible that even had the [Controlling Commissioners] agreed with [CREW's] view of the law" as to New Models' alleged status as a political committee, they

---

[3] The majority opinion's concern that judicial review would be "advisory," Majority Op. 15, simply assumes the answer to whether the Commissioners would reach the same decision were this court to decide that all or material parts of the Commissioners' Statement of Reasons was wrong.

[4] The Commission has since walked back any reliance on the footnoted statute-of-limitations concern. The two Controlling Commissioners cited the catch-all five-year statute of limitations for fines, penalties, and forfeitures set out in 28 U.S.C. § 2462, which the Commission now is not confident applies to the types of injunctive and declaratory relief available here, 52 U.S.C. § 30109(a)(6)(A). *See* Oral Arg. Tr. 21:13–22, 23:10–12 ("[T]he Commission here did not make a determination one way or the other that it could not pursue any remedy whatsoever."); *see also, e.g., Saad v. SEC*, 980 F.3d 103, 107 (D.C. Cir. 2020).

"would still have decided in the exercise of [their] discretion" not to proceed further against New Models. *Akins*, 524 U.S. at 25. But "we cannot know that the [Commissioners] would have exercised [their] prosecutorial discretion in this way" if the lengthy legal analysis to which they devoted so much work were to be overturned or modified on judicial review. *Id.*[5]

Faced with this powerful evidence that the Commissioners' nod to prosecutorial discretion was simply a passing remark not intended to take anything away from their thoroughgoing merits decision, I would not allow the Commission to insulate its 31 pages of legal and evidentiary analysis—which constitute the agency's final decision—from Congress's express provision of judicial review.

**B**

The majority opinion places heavy weight on this court's decision in *Citizens for Responsibility and Ethics in Washington v. Federal Election Commission*, 892 F.3d 434 (D.C. Cir. 2018), a case referred to as *Commission on Hope*.

---

[5] *See also, e.g.*, *Williams Gas Processing-Gulf Coast Co. v. FERC*, 475 F.3d 319, 330 (D.C. Cir. 2006) ("'When an agency relies on multiple grounds for its decision, some of which are invalid,' we may only 'sustain the decision where one is valid and the agency would clearly have acted on that ground even if the other were unavailable.'") (formatting modified) (quoting *Casino Airlines, Inc. v. National Transp. Safety Board*, 439 F.3d 715, 717–718 (D.C. Cir. 2006)); *International Union, United Mine Workers v. Department of Labor*, 358 F.3d 40, 44–45 (D.C. Cir. 2004) (finding that agency acted arbitrarily and capriciously where "[t]wo of the three reasons it gave * * * would not support its decision, and we do not know— nor are we free to guess—what the agency would have done had it realized that it could not justify its decision" by relying on the two invalid grounds).

*Commission on Hope*, like the case at hand, involved a challenge to the Commission's dismissal of an administrative complaint after a deadlocked "reason to believe" vote. *See* 892 F.3d at 436–437. The similarities end there.

In *Commission on Hope*, the controlling commissioners found that the accused entity in fact no longer existed, it had filed termination papers with the Internal Revenue Service four years earlier, it had no money, its counsel had resigned, the "'defunct' association no longer had any agents who could legally bind it[,]" any legal action would "raise 'novel legal issues that the Commission had no briefing or time to decide[,]'" the statute of limitations had expired or nearly expired, and any conciliation effort would be futile. 892 F.3d at 438, 441 n.13. For those reasons—and those reasons alone—the controlling commissioners in *Commission on Hope* decided that "the most prudent course was to close the file consistent with the Commission's exercise of its discretion in similar matters." *Id.* at 441 n.13.

On appeal, this court held that the dismissal was unreviewable because the three commissioners who voted against proceeding based "their judgment squarely on the ground of prosecutorial discretion." *Commission on Hope*, 892 F.3d at 439. Indeed, the Commission never voted on the "reason to believe" question at all. *See id.* (holding that 52 U.S.C. § 30109 does not "constrain the Commission's discretion whether to make th[e] ['reason to believe' and 'probable cause'] determinations in the first instance"). As this court explained, when the Commission sidesteps a "reason to believe" or "probable cause" judgment altogether, and instead exercises its prosecutorial discretion to dismiss the administrative complaint, courts have "no meaningful standard against which to judge [that] exercise of discretion." *Id.* (quoting *Chaney*, 470 U.S. at 830); *see id.* at 441.

The majority opinion reasons that "this case is not materially distinguishable from *Commission on Hope*[.]" Majority Op. 6.

*Au contraire*. The cases are polar opposites in the one way that matters most. The central rationale for *Commission on Hope* was that there was no legal or evidentiary-based decision—none—from the Commission for the court to review. Those commissioners "placed their judgment *squarely* on the ground of prosecutorial discretion." *Commission on Hope*, 892 F.3d at 439 (emphasis added). The opinion, in fact, expressly rejected the dissenting opinion's view that the controlling commissioners must have engaged in some implicit statutory interpretation. *See id.* at 441 & n.13; *see also id.* at 443 (Pillard, J., dissenting) ("My colleagues do not believe that the Commission made any legal decision, so *a fortiori* they see nothing 'contrary to law[.]'").

The case before us is 180 degrees different. The Commissioners did not avoid making a "reason to believe" decision. They confronted the issue head on, explaining for pages and pages and pages why, as a legal and factual matter, they did not have reason to believe that New Models violated the law. *See* J.A. 103–133 & nn.1–138.

For starters, the Commissioners' introduction to the Statement of Reasons squarely based their decision on *legal* analysis, with no mention of prosecutorial discretion:

> [W]e concluded that New Models's major purpose was not the nomination or election of federal candidates over the course of its existence, that New Models's major purpose did not change to become the nomination or election of federal candidates based upon its contributions to political committees in one calendar year, and that New Models was not a

political committee. Accordingly, we voted against finding reason to believe that New Models violated the Act.

J.A. 104.

The next 29 pages of the Statement of Reasons—which constitute the entire analysis section—focus exclusively on the legal question of whether New Models qualifies as a political committee. Again, with no mention of prosecutorial discretion. *See* J.A. 104–133.

The summary at the end of the Statement of Reasons devotes an entire paragraph, save seven words, to reiterating the Commissioners' legal conclusion that, "[b]ased on our review of the evidence in the record," "New Models's organizational purpose, tax exempt status, public statements, and overall spending evidence an issue discussion organization, not a political committee having the major purpose of nominating or electing candidates." J.A. 133. And the decision finding no reason to believe is expressly grounded on "these reasons[.]" J.A. 133. Prosecutorial discretion appears, at most, to piggyback on that judgment, given that it is tacked on with the conjunction "and[.]" J.A. 133. After all, why would the Commissioners want to proceed further given that they had already spent so much time, effort, and resources in concluding that New Models did not violate the Act?

So while there was "no meaningful standard" against which to measure the pure exercise of prosecutorial discretion at issue in *Commission on Hope*, law abounds for a court to apply in reviewing the Commissioners' 31-page legal and evidentiary "reason to believe" judgment in this case.

And under circuit precedent, even when an agency includes a non-enforcement decision that may be unreviewable

as part of its determination, that does not prevent us from reviewing the other legal grounds presented in that same case. *See People for the Ethical Treatment of Animals v. Department of Agric.*, 797 F.3d 1087, 1097–1098 (D.C. Cir. 2015) (declining to decide whether agency's non-enforcement decisions were reviewable, and affirming dismissal on alternative ground that plaintiff had failed to plausibly allege that the agency's inaction constituted "agency action unlawfully withheld"); *see also Campaign Legal Ctr.*, 952 F.3d at 356–357 (avoiding question of whether Commission's invocation of prosecutorial discretion rendered dismissal unreviewable, and affirming on grounds that Commission's statement of reasons provided a "sufficiently reasonable basis" for the dismissal).

To put a finer point on it, imagine if three commissioners were to decide that the agency is organized in an unconstitutional manner and, after explaining their constitutional reasoning in detail, dismissed *every* enforcement action to come before the agency. Under the majority opinion's view, if the Commission cursorily appended "and in the exercise of our prosecutorial discretion" to its legal reasoning, the Commission's constitutional analysis would be beyond the judicial power to ever review.

In my view, that opens the door to the dangerously easy evasion of judicial review and is contrary to law. *See Campaign Legal Ctr.*, 952 F.3d at 358 (Edwards, S.J., concurring) ("The [Commission] argues that, because the Statement of Reasons * * * was an exercise of 'prosecutorial discretion,' Appellants' challenge is entirely beyond judicial scrutiny. The Commission is wrong."); *Citizens for Resp. & Ethics in Wash. v. FEC* (*Commission on Hope II*), 923 F.3d 1141, 1148 (D.C. Cir. 2019) (Pillard, J., dissenting from denial of rehearing en banc) (pointing to the New Models case as

evidence that the Commission allows "a perfunctory recitation of 'prosecutorial discretion' to shield legal holdings from the 'contrary-to-law' review" expressly provided for in the Federal Election Campaign Act); *id*. at 1142–1143 (Griffith, J., concurring in the denial of rehearing en banc) (To the extent that *Commission on Hope* can be read to "foreclose * * * our review of the decision not to proceed, [it] certainly seems contrary to Congress's intent.").[6]

The majority opinion ignores these consequences. Instead, it seizes on the statement in *Commission on Hope* that, "even if some statutory interpretation could be teased out of the Commissioners' statement of reasons, the dissent would still be mistaken in subjecting the dismissal * * * to judicial review" because "this circuit 'rejects the notion of carving reviewable legal rulings out from the middle of non-reviewable actions,'" 892 F.3d at 441–442 (quoting *Crowley Caribbean Transp.,*

---

[6] Nor is the majority opinion's conclusion that a fleeting reference to prosecutorial discretion requires courts to avert their eyes from the agency's substantive determinations necessarily confined to a deadlocked Federal Election Commission. The same rationale would presumably apply to a decision issued by the full Commission. At least the majority opinion does not explain why it would not. Other agency non-enforcement decisions that are presently subject to judicial review seem susceptible as well. For example, under the majority opinion's theory, an agency's jurisdictional determinations could be insulated from review with the simple addition of a nod to prosecutorial discretion. *See Association of Civilian Technicians, Inc. v. FLRA*, 283 F.3d 339, 343 (D.C. Cir. 2002) (citing *International Longshoremen's Ass'n v. National Mediation Board*, 785 F.2d 1098, 1100–1101 (D.C. Cir. 1986)) (explaining that agency non-enforcement decisions "may be reviewed if they rest on the agency's erroneous belief that it lacks jurisdiction").

*Inc. v. Peña*, 37 F.3d 671, 676 (D.C. Cir. 1994)). *See* Majority Op. 10.

That is a frail reed for the majority opinion to rest on. For starters, the language from *Commission on Hope* was dicta. Because the controlling commissioners there provided no legal analysis at all, there was nothing to tease out. *Commission on Hope*, 892 F.3d at 441–442; *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 66–67 (1996) ("We adhere in this case * * * not to mere *obiter dicta*, but rather to the well-established rationale upon which the Court based the results of its earlier decisions.").

But there is an even bigger problem with the majority opinion's reliance on that language: No one is "teasing" a legal ruling out of the Commissioners' decision here. *Commission on Hope*, 892 F.3d at 442 (quoting *Crowley*, 37 F.3d at 676). Legal determinations are all over the face of the document for 31 pages; they are all the Commission talks about. You could not miss them if you tried. It is the invocation of prosecutorial discretion that is so fleeting you will miss it if you blink.

Nor is anyone "carving" a legal ruling out of the "middle of [a] non-reviewable action[.]" *Crowley*, 37 F.3d at 676. The Commission's legal findings, determinations, and conclusions constitute 99.9% of the Statement of Reasons.

Those simple facts are not, as the majority opinion would have it, focusing "on form, not substance." Majority Op. 11–12. My position is all about substance—31 pages of it—and the ability of courts to provide the judicial review of those legal determinations that Congress directed. If anything, it is the majority opinion that elevates seven words of "prose composition[,]" Majority Op. 11, to cut off judicial review of the 14,500 words of substantive legal determinations.

Allowing, in other words, a single hair on the tip of the tail to wag the dog.

So the issue is not whether courts can go rummaging through agency exercises of prosecutorial discretion to try and unearth some legal aspect to review. What is at stake here instead is a much further-reaching and consequential question: Can a federal agency openly consider, address, and issue comprehensive determinations of law in its final agency action, and then avoid all accountability for and judicial review of its decision just by tacking onto the end "and in exercise of our prosecutorial discretion"? In my view, that is a deeply troublesome and legally erroneous precedent to set. I respectfully dissent.