# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Filed: December 12 , 2022

No. 19-5161

CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON
AND NOAH BOOKBINDER,
APPELLANTS

v.

FEDERAL ELECTION COMMISSION,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cv-00076)

———

On Petition for Rehearing En Banc

———

Before: SRINIVASAN, *Chief Judge*; HENDERSON\*\*,
MILLETT\*\*\*, PILLARD\*\*\*, WILKINS, KATSAS\*\*, RAO\*\*,
WALKER\*\*, CHILDS\*, and PAN\*, *Circuit Judges*

# **O R D E R**

Appellants' petition for rehearing en banc and the response thereto were circulated to the full court, and a vote was requested. Thereafter, a majority of the judges eligible to participate did not vote in favor of the petition. Upon

consideration of the foregoing, and the motions of movant-amici Election Law Scholars, Senators Sheldon Whitehouse, et al, Professors of Administrative Law, Brennan Center for Justice at NYU Law School, and Campaign Legal Center for leave to participate as amici curiae in support of appellants' petition for rehearing en banc, and the lodged briefs amici curiae, it is

**ORDERED** that the motions be granted. The Clerk is directed to file the lodged briefs amici curiae. It is

**FURTHER ORDERED** that the petition be denied.

**Per Curiam**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:  /s/
Daniel J. Reidy
Deputy Clerk

\* Circuit Judges Childs and Pan did not participate in this matter.

\*\* A statement by Circuit Judge Rao, joined by Circuit Judges Henderson, Katsas and Walker, concurring in the denial of rehearing en banc, is attached.

\*\*\* Circuit Judges Millett and Pillard would grant the petition for rehearing en banc. A statement by Circuit Judge Millett, joined by Circuit Judge Pillard, dissenting from the denial of rehearing en banc, is attached.

RAO, *Circuit Judge*, with whom Circuit Judges HENDERSON, KATSAS, and WALKER join, concurring in the denial of rehearing en banc: The Federal Election Commission's decision to dismiss a complaint on the grounds of prosecutorial discretion is not judicially reviewable, and I therefore concur in the denial of the petition for rehearing en banc. As explained in detail in the panel opinion, courts cannot review the exercise of enforcement discretion committed to executive agencies, including the Commission. *See Citizens for Resp. & Ethics in Wash. v. FEC* ("*New Models*"), 993 F.3d 880 (D.C. Cir. 2021). In our structure of separated powers, "an agency's refusal to institute proceedings" falls within "the special province of the Executive Branch"—a province the judiciary cannot invade. *Heckler v. Chaney*, 470 U.S. 821, 831 (1985); U.S. CONST. art. II, § 1. The Administrative Procedure Act ("APA") enshrines this principle by explicitly withholding judicial review of matters "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The Federal Election Campaign Act ("FECA") leaves such executive discretion in place, consistent with the Constitution and the APA. FECA importantly provides for judicial review of decisions "contrary to law," 52 U.S.C. § 30109(a)(8)(C), but the Commission may decline to move forward with an enforcement action for reasons of prosecutorial discretion and such decisions cannot be reviewed by this court.

\* \* \*

The dissent expresses consternation about the inability of this court to oversee the Commission's non-enforcement decisions. But nowhere does it contest that the Commission retains prosecutorial discretion or that a decision based entirely, or even in some substantial part, on such discretion would be unreviewable. Here, it is clear the so-called "controlling commissioners" declined to proceed against New Models for reasons of prosecutorial discretion, and also, independently, for legal reasons. The dissent argues we must

be able to review the independent legal reasons. But, as the Supreme Court has repeatedly admonished, courts cannot simply pluck out legal questions from nonreviewable decisions.[1] *ICC v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 283 (1987); *see also Ass'n of Civilian Technicians, Inc. v. FLRA*, 283 F.3d 339, 343 (D.C. Cir. 2002) (explaining the Supreme Court has "square[ly] reject[ed] the notion of carving reviewable legal rulings out from the middle of non-reviewable actions") (cleaned up). FECA does not alter this basic rule. *See FEC v. Akins*, 524 U.S. 11, 25 (1998); *New Models*, 993 F.3d at 890–92. The Commission's non-enforcement discretion is thus unreviewable, irrespective of how many pages the controlling commissioners devote to legal analysis and how many to explaining the exercise of prosecutorial discretion.

In FECA, Congress created an unusual, evenly divided, bi-partisan Commission. Of the six commissioners, no more than three can be from "the same political party." 52 U.S.C. § 30106(a)(1). Every step of the enforcement process requires "an affirmative vote of 4" commissioners, which means at least some bi-partisan agreement. *Id.* § 30106(c). Upon receiving a complaint, the Commission may begin an investigation only after four commissioners find there is "reason to believe" a

---

[1] The dissent argues the legal reasons offered by the controlling commissioners contravened a district court decision. *See* Dissenting Op. 1, 6, 10. That is simply not so. The controlling commissioners cited the relevant case and applied its reasoning. Statement of Reasons of Vice Chair Caroline C. Hunter and Commissioner Lee E. Goodman at 25 n.114, MUR 6872 (New Models) (Dec. 20, 2017) (citing *Citizens for Resp. & Ethics in Wash. v. FEC*, 209 F. Supp. 3d 77, 94 (D.D.C. 2016)); *see also id.* at 2. Even if we were to disagree with the Commission's understanding of a district court decision, this court would still lack the authority to carve out that legal question from the Commission's unreviewable exercise of prosecutorial discretion.

person has committed or may commit a violation of FECA. *Id.* § 30109(a)(2). After an investigation, four commissioners must agree there is "probable cause" to find the respondent has committed a violation of FECA. *Id.* § 30109(a)(4)(A)(i). Upon a finding of probable cause, the Commission must for at least 30 days seek to remedy the violation through "conference, conciliation, and persuasion." *Id.* The Commission must endeavor to enter into a conciliation agreement, which also requires four votes. *Id.* If such conciliation measures fail, the Commission may "institute a civil action for relief," but only after yet another affirmative vote of four commissioners. *Id.* § 30109(a)(6)(A).

In FECA's carefully articulated enforcement process, Congress required the Commission to clear a series of bi-partisan vetogates before commencing an enforcement action. If four votes are lacking at any step of enforcement, no action moves forward. The statutory arithmetic means three of the six commissioners may block further investigation or enforcement of a complaint. The number is fewer still if the Commission has vacancies, which it often does. This case, for instance, arose when the Commission had only four commissioners and two voted against enforcement.

The dissent repeatedly denounces the control exerted by a "minority" of the Commission.[2] That concern arises not from the panel opinion, but from Congress's requirement that four

---

[2] The dissent also complains that a "minority" provides the Statement of Reasons that forms the basis for judicial review. Dissenting Op. 19–20. But this requirement is the product of this court's longstanding directive that the commissioners who voted against proceeding must explain their reasons to further our review of whether the dismissal is "contrary to law." *See, e.g.*, *FEC v. Nat'l Republican Senatorial Comm.*, 966 F.2d 1471, 1476 (D.C. Cir. 1992).

of six commissioners agree to enforcement actions. By legislative design, three commissioners, or half, may prevent enforcement. The dissent simply ignores FECA's four-commissioner requirements, "undermin[ing] the carefully balanced bipartisan structure which Congress has erected." *Common Cause v. FEC*, 842 F.2d 436, 449 n.32 (D.C. Cir. 1988).

Congress created a limited safety valve for Commission dismissals and inaction. An aggrieved party may file a complaint in court, but judicial review is restricted to "declar[ing] that the dismissal of the complaint or the failure to act is contrary to law." 52 U.S.C. § 30109(a)(8)(C). As the dissent concedes, "[t]he commissioners did not reference their merits analysis as a ground for exercising prosecutorial discretion." Dissenting Op. 7. Instead, the controlling commissioners explained the exercise of prosecutorial discretion was based on "the age of the activity and the fact that the organization appears no longer active." Statement of Reasons of Vice Chair Caroline C. Hunter and Commissioner Lee E. Goodman at 31 n.139, MUR 6872 (New Models) (Dec. 20, 2017). Because the controlling commissioners relied on an independent ground of prosecutorial discretion, this court has no basis for declaring that decision "contrary to law." Moreover, judicial review of the Commission's separate legal reasons would risk an advisory opinion, for the court would not, and could not, disturb the Commission's bottom line. *See New Models*, 993 F.3d at 889. The non-reviewability of the Commission's dismissal in this case comports with FECA's limited judicial review provision.

The dissent also worries that commissioners will hide behind prosecutorial discretion to avoid judicial review. That concern has proven to be overstated. Since *New Models* was decided, the Commission has dismissed numerous complaints

without invoking prosecutorial discretion, allowing those decisions to be reviewed.[3]

Perhaps of greater concern are the actions of some commissioners, in the wake of *New Models*, concealing the basis for Commission action or inaction. In some cases, when the Commission has lacked four votes to proceed and the controlling commissioners have relied on prosecutorial discretion, the Commission is failing to make these decisions public.[4] As a consequence, the party complaining to the Commission, the target of the complaint, and the district court are all left in the dark about whether and how the Commission has acted. When lawsuits are initiated to challenge the perceived inaction, the Commission has sometimes failed to appear to defend against the complaint. *Campaign Legal Ctr. v. FEC*, 2022 WL 2111560, at *2–3 (D.D.C. May 13, 2022); *see also* Statement of Commissioner Ellen L. Weintraub On the

---

[3] *See, e.g.*, Statement of Reasons of Chairman Allen J. Dickerson, Commissioner Sean J. Cooksey, Commissioner James E. "Trey" Trainor, III, and Commissioner Ellen L. Weintraub, MUR 7700 (*VoteVets*) (Apr. 29, 2022); Statement of Reasons of Vice Chair Allen Dickerson and Commissioners Sean J. Cooksey and James E. "Trey" Trainor, III, MUR 7766 (*Florida Country, et al.*) (Dec. 3, 2021); Statement of Reasons of Vice Chair Allen Dickerson and Commissioners Sean J. Cooksey and James E. "Trey" Trainor, III, MUR 7753 (*Friends of Lucy McBath*) (Oct. 8, 2021); Statement of Reasons of Vice Chair Allen Dickerson and Commissioners Sean J. Cooksey and James E. "Trey" Trainor, III, MUR 7413 (*Jonathan Jenkins for Senate*) (July 14, 2021).

[4] *See Campaign Legal Ctr. v. FEC*, 2022 WL 1978727, at *1 (D.D.C. June 6, 2022); *Campaign Legal Ctr. v. FEC*, 2022 WL 2111560, at *4 (D.D.C. May 13, 2022), *aff'd*, 2022 WL 4280689 (D.C. Cir. Sept. 14, 2022); Opposed Mot. to Hold Appeals in Abeyance at 1, *Campaign Legal Ctr. v. FEC*, Nos. 22-5140, 22-5167 (D.C. Cir. June 23, 2022).

Opportunities Before the D.C. Circuit in the *New Models* Case To Re-Examine *En Banc* Its Precedents Regarding 'Deadlock Deference' at 11 (Mar. 2, 2022) ("Nothing in the law compels a commissioner … to vote to defend lawsuits she believes to be indefensible."). The district courts have understandably assumed Commission votes "are publicly announced," finding "no reason" to think "a vote that should have been publicly reported … was not." *Campaign Legal Ctr. v. FEC*, 2022 WL 2111542, at *3 (D.D.C. Apr. 21, 2022). Seeing only a failure to act in the public record and with no appearance by the Commission, district courts have entered default judgments and allowed citizen suits to proceed even though (unbeknownst to the court) the Commission has relied on prosecutorial discretion. *Id.*; *see also Campaign Legal Ctr. v. FEC*, 2022 WL 1978727, at *1 (D.D.C. June 6, 2022) (noting "one week after the Court's order" evidence was presented that "the Commission did act on the complaint, making the case moot," but "[r]egrettably" denying intervention as untimely). While litigation has moved ahead, the targets of these complaints have been forced to file FOIA requests simply to learn the Commission had in fact voted to dismiss the complaint on the grounds of prosecutorial discretion. *See Campaign Legal Ctr.*, 2022 WL 2111560, at *4. Legal questions around these actions are being litigated in our circuit, but they are not before us today.

\* \* \*

The Supreme Court and our circuit have affirmed that the Federal Election Commission retains prosecutorial discretion. When such discretion is invoked as an independent basis for a non-enforcement decision, it cannot be reviewed by this court. It is emphatically not the province of the courts to consider whether more vigorous enforcement of election laws would be desirable in order to target "dark money in politics." Dissenting

Op. 21. Those are questions for Congress and the bi-partisan Commission. For the foregoing reasons and those in the panel opinion, I concur in the denial of rehearing en banc.

MILLETT, *Circuit Judge*, with whom Circuit Judge PILLARD joins, dissenting from the denial of rehearing en banc: Essential to the rule of law is the principle that a governmental agency cannot become a law unto itself. Yet that is what the court's decision here permits. The opinion licenses a *minority* within a federal agency to pronounce extensive and substantive legal determinations that will affect the course of agency decisionmaking and the behavior of regulated parties, while inoculating those decisions from judicial review just by tacking a fleeting reference to prosecutorial discretion on at the tail end of the decision.

According to the court, that sleight of word bars all judicial review even when the substantive legal analysis is expressly denominated an "independently sufficient" basis for decision, separate and apart from any claim of prosecutorial discretion. Worse still, it eviscerates the explicit private right to judicial review that Congress wrote into the Federal Election Campaign Act. It hamstrings review even when, as here, the agency's reading of federal law openly defies a federal court order holding that very same statutory interpretation unlawful.

I would not arm an agency minority with what is in effect a judicial-review kill switch. Neither am I able to turn my back on such agency disregard not only of an adverse court judgment, but also settled statutory requirements and this court's binding precedent. For those reasons, I dissent from the denial of rehearing en banc.

**I**

An explanation of the statutory scheme and background is necessary to appreciate the consequences of the court's decision.

2

**A**

The Federal Election Commission is entrusted with the weighty responsibility of ensuring public transparency and accountability by those individuals and entities expending significant sums of money on our Nation's elections. *See* 52 U.S.C. § 30106(b)(1). The Commission is composed of six voting members appointed by the President with the advice and consent of the Senate. *Id.* § 30106(a)(1). Commissioners serve staggered six-year terms, and no more than three of the six Commissioners may belong to the same political party. *Id.* § 30106(a)(1), (a)(2)(A).

The Commission may investigate potential violations of the law on its own initiative or in response to a complaint. *See* 52 U.S.C. §§ 30107(a), 30109. Any person who believes that a violation of the Federal Election Campaign Act has occurred may file an administrative complaint with the Commission. *Id.* § 30109(a)(1). When the Commission receives such a complaint, it votes on whether it has "reason to believe" that the accused person or entity violated the Act. *Id.* § 30109(a)(2). If at least four of the six commissioners determine there is reason to believe a violation occurred, the Commission must go forward with an investigation. *Id.* Because no more than three commissioners may be members of the same political party, *id.* § 30106(a)(1), the four-member requirement ensures that each enforcement decision is bipartisan. *See Citizens for Resp. & Ethics in Wash. v. FEC* (*Commission on Hope II*), 923 F.3d 1141, 1142 (D.C. Cir. 2019) (Griffith, J., concurring in denial of rehearing en banc). If four commissioners do not find reason to believe a violation occurred, the Commission often dismisses the administrative complaint and closes the file.

Of course, this structure creates a risk that partisan deadlock will prevent enforcement of campaign finance laws. *Commission on Hope II*, 923 F.3d at 1146 (Pillard, J., dissenting from denial of rehearing en banc). But Congress accounted for that possibility with a judicial review provision that allows "[a]ny party aggrieved" by the Commission's dismissal of a complaint to seek review in federal court. 52 U.S.C. § 30109(a)(8)(A). A court "may declare that the dismissal of the complaint or the failure to act is contrary to law," *id.* § 30109(a)(8)(C), if the Commission relied on "an impermissible interpretation of the Act," or if the dismissal was otherwise arbitrary, capricious, or an abuse of discretion. *Orloski v. FEC*, 795 F.2d 156, 161 (D.C. Cir. 1986).

When the Commission deadlocks and thereafter dismisses a complaint, the commissioners who voted against proceeding must "issue a statement explaining their votes." *Citizens for Resp. & Ethics in Wash. v. FEC* (*Commission on Hope*), 892 F.3d 434, 437 (D.C. Cir. 2018). This statement of reasons issued by the so-called "controlling commissioners" is intended to facilitate judicial review of the dismissal decision and allow a court to "intelligently determine whether the Commission is acting 'contrary to law.'" *Democratic Cong. Campaign Comm. v. FEC*, 831 F.2d 1131, 1132 (D.C. Cir. 1987) (citation omitted); *see also id.* at 1133–1135; *FEC v. National Republican Senatorial Comm.*, 966 F.2d 1471, 1476 (D.C. Cir. 1992).

If a court rules the dismissal improper, the Commission has 30 days to reconsider its position. 52 U.S.C. § 30109(a)(8)(C). But if the agency still chooses not to go forward, then the complaining party is authorized to independently file suit to enforce the law. *Id.* The statute, in other words, never requires the agency to bring an enforcement action that it does not want to bring. It just opens the door to private enforcement by an aggrieved party.

4

**B**

This case began when Citizens for Responsibility and Ethics in Washington ("CREW") filed an administrative complaint with the Commission, alleging that an entity known as New Models had violated the Federal Election Campaign Act by failing to register as a political committee and to submit required disclosures. The complaint alleged that, in the 2012 federal election year, New Models contributed 68.5% of its annual spending (nearly $3.1 million) to independent, expenditure-only political committees that support federal campaign activity (also known as Super PACs). The Super PACs that received contributions from New Models were all heavily involved in efforts to influence the 2012 elections. *See* J.A. 22.

The Commission's General Counsel recommended finding reason to believe that New Models violated the Act by failing to register as a political committee given that two-thirds of its expenditures in the 2012 election year went to Super PACs that supported federal campaign activity. But the Commission deadlocked 2–2 on the "reason to believe" vote, with the fifth commissioner recused.[1] After that deadlock, the four commissioners voted to dismiss the complaint.[2]

---

[1] The sixth Commission seat was vacant at the time. J.A. 101.

[2] Two separate votes took place: the vote on whether there was reason to believe a violation had occurred, and a vote on whether to dismiss the complaint and close the file. "Dismissals do not inevitably or automatically 'result' from 'deadlock votes.' They result from one or more commissioners changing course and, for their own reasons, voting in favor of a succeeding motion to dismiss and close the file on the matter." Statement of Commissioner Ellen L. Weintraub on the Opportunities Before the D.C. Circuit in the *New*

The two controlling commissioners provided a statement of reasons for their votes not to find reason to believe a violation had occurred. Their legal analysis spanned 31 single-spaced pages and explained in extensive detail their view that New Models was not a political committee. They began by setting out the applicable legal framework, explaining that the Commission's "controlling statute and court decisions stretching back over forty years properly tailor the applicability of campaign finance laws to protect non-profit issue advocacy groups from [the Federal Election Campaign Act's] burdensome political committee registration and reporting requirements." J.A. 103. To that end, only those organizations with the "major purpose" of nominating or electing federal candidates must meet those requirements. J.A. 103. "Determining an organization's major purpose[,]" the commissioners explained, "requires a comprehensive, case-specific inquiry that focuses on the organization's public statements, organizational documents, and overall spending history." J.A. 103.

After exhaustively detailing the historical development of the Federal Election Campaign Act, analyzing the statute's meaning, and applying their version of the major-purpose analysis to the facts of the case before them, the commissioners expressly concluded that New Models was not a political

_Models_ Case to Re-Examine _En Banc_ Its Precedents Regarding 'Deadlock Deference' at 4 (March 2, 2022), https://www.fec.gov/resources/cms-content/documents/2022-03-02-ELW-New-Models-En_Banc.pdf (last accessed Dec. 1, 2022). For example, Commissioners who voted in favor of the "reason to believe" motion may vote to dismiss in "the interests of transparency of agency operations, closure for respondents, public accountability for the nay-saying commissioners, or in hopes the complainant will sue the agency and obtain a judicial reversal." _Id._ at 9.

committee. They reasoned that New Models neither made the requisite expenditures nor had the major purpose of nominating or electing federal candidates.

The controlling commissioners came to that major-purpose conclusion by relying on New Models' expenditures over its organizational lifetime, shrugging off the expenditures that New Models concentrated in an election year. They employed this mode of analysis even though it had been ruled unlawful the year before in a final and unappealed court ruling. *See Citizens for Resp. & Ethics in Wash. v. FEC*, 209 F. Supp. 3d 77, 93–94 (D.D.C. 2016).

The commissioners repeatedly pointed to their statutory analysis and application of it to the record as the reason for their votes against proceeding further. *See, e.g.*, J.A. 103–104 (Based on New Models' lifetime expenditure patterns, rather than election year spending, the commissioners "[a]ccordingly * * * voted against finding reason to believe that New Models violated the Act."); J.A. 120 ("Upon thorough consideration of various facts indicative of political committee status * * *, we do not have reason to believe that" the legal criteria for a political committee were met.). Doubling down on their legal conclusion, the commissioners specifically labeled their determinations that New Models had not made the requisite expenditures and did not have the requisite major purpose as "independently sufficient" reasons for dismissal of the complaint. J.A. 123 n.95.

After that considerable legal analysis, the commissioners added one final sentence: "For these reasons, and in the exercise of our prosecutorial discretion, we voted against finding reason to believe that New Models violated the Act by failing to register and report as a political committee and to dismiss the matter." J.A. 133 (footnote omitted). That

dependent clause constitutes the only reference to prosecutorial discretion in the entire 31 pages—just seven out of more than 14,500 words. To that sentence, the commissioners appended a brief footnote which stated that, "[g]iven the age of the activity and the fact that the organization appears no longer active, proceeding further would not be an appropriate use of Commission resources." J.A. 133 n.139 (citing *Heckler v. Chaney*, 470 U.S. 821 (1985); 28 U.S.C. § 2462 (five-year statute of limitations); *Nader v. FEC*, 823 F. Supp. 2d 53, 65–66 (D.D.C. 2011)). The commissioners failed to explain those points, and the Commission itself later walked one of them back. *See* Oral Arg. Tr. 21:13–22, 23:10–12 (explaining that the Commission is not confident the five-year statute-of-limitations applies). The commissioners did not reference their merits analysis as a ground for exercising prosecutorial discretion. They left that legal analysis as a freestanding and independently sufficient basis for their votes to dismiss.

CREW filed suit, challenging the Commission's dismissal of its administrative complaint as contrary to law. The decision for the court held that the two commissioners' mere incantation of "prosecutorial discretion" insulated the Commission's entire dismissal decision, including its exhaustive legal analysis, from judicial review. *See Citizens for Resp. & Ethics in Wash. v. FEC*, 993 F.3d 880, 882 (D.C. Cir. 2021). The court viewed this question as controlled by our earlier divided decision in *Citizens for Responsibility and Ethics in Washington v. FEC* (*Commission on Hope*), 892 F.3d 434 (D.C. Cir. 2018). *See Citizens for Resp. & Ethics in Wash.*, 993 F.3d at 884–885. In a dissenting opinion, I explained why the plain text of the Federal Election Campaign Act and our precedent allow for judicial review of the controlling commissioners' decision, *id.* at 900–903, and why this case magnifies the problems with *Commission on Hope*, *id.* at 903–905.

More specifically, in *Commission on Hope*, this court held that a Commission dismissal was unreviewable when three commissioners voted against proceeding and based "their judgment *squarely* on the ground of prosecutorial discretion." 892 F.3d at 439 (emphasis added). The controlling commissioners in that case did not undertake any substantive legal analysis, stating instead that the "most prudent course" was to dismiss the case because the accused entity was "defunct[,]" it "no longer had any agents who could legally bind it[,]" any legal action would "raise novel legal issues that the Commission had no briefing or time to decide[,]" the statute of limitations had expired or nearly expired, and "any conciliation effort would be futile[.]" *Id.* at 438, 441 n.13 (formatting modified). The opinion implied that the commissioners had not even voted on the "reason to believe" question at all, *see id.* at 439, nor had they engaged in implicit statutory interpretation in voting to dismiss the case, *see id.* at 441 & n.13.

Still, in this court's evenly split decision denying rehearing en banc, several members of the court recognized the troubling implications of the decision. Judge Pillard warned of its adverse consequences, explaining that the decision "empowers any partisan bloc of the Commission to cut off investigation and stymie review of even the most serious violations of federal campaign finance law by uttering 'magic words' of enforcement discretion[,]" *Commission on Hope II*, 923 F.3d at 1144 (Pillard, J., dissenting from denial of rehearing en banc), and citing this very case as a sign of what was to come, *id.* at 1148–1149 (citing *Citizens for Resp. & Ethics in Wash. v. FEC* (*New Models*), 380 F. Supp. 3d 30 (D.D.C. 2019)); *see also id.* at 1144 ("The majority opinion contravenes the statute and binding precedent, undercuts the design Congress devised to avoid both partisan domination and partisan deadlock in the Commission's enforcement process, and has already been

applied by the Commission and district court to truncate other cases.").

Judge Griffith agreed that the panel decision "certainly seems contrary to Congress's intent." *Commission on Hope II*, 923 F.3d at 1142–1143 (Griffith, J., concurring in denial of rehearing en banc). He also disapproved of the majority opinion's suggestion that "when three Commissioners invoke 'prosecutorial discretion' they foreclose both the FEC enforcement action and our review of the decision not to proceed[.]" *Id*. But he ultimately concluded that *Commission on Hope* was not the right case in which to address those important legal questions, citing uncertainty as to whether there was actually a substantive legal judgment for the court to review. *Id.* at 1143.

## II

### A

As Judge Griffith worried, Judge Pillard predicted, and Judge Edwards has since echoed, the *Commission on Hope* chickens have come home to roost. The court's decision in this case renders for naught statutorily mandated judicial review. *See Campaign Legal Ctr. v. FEC*, 952 F.3d 352, 358 (D.C. Cir. 2020) (Edwards, J., concurring) ("The FEC argues that, because the Statement of Reasons given by the three 'controlling' Commissioners who voted to dismiss Appellants' complaints said that the dismissal was an exercise of 'prosecutorial discretion,' Appellants' challenge is entirely beyond judicial scrutiny. The Commission is wrong.").

There is no question that the commissioners engaged in substantive legal analysis—31 single-spaced pages and 138 footnotes of it. There was not a peep about prosecutorial discretion anywhere in those many pages of legal analyses and

determinations. In fact, the commissioners themselves labeled their legal analysis an "independently sufficient" basis for dismissing the complaint. J.A. 123 n.95.

Yet the court has allowed just two commissioners—not even half of the full Commission—to thwart judicial review—and to do so precisely when judicial supervision is most acutely needed because the commissioners relied critically on a legally invalidated interpretation of statutory text. *See Citizens for Resp. & Ethics in Wash.*, 209 F. Supp. 3d at 94.

Is it any wonder that the commissioners wanted to cut off judicial review after they had spent dozens of pages thumbing their nose at binding judicial precedent? Yet, according to the court, a fleeting reference to prosecutorial discretion by a Commission minority—not by the Commission itself—automatically rendered the rest of the commissioners' statement, and all of their legal analyses and conclusions, untouchable by the courts. J.A. 123 n.95.

The court's decision, in other words, hands the agency and its members a Get Out of Judicial Review Free card even though Congress expressly mandated judicial review of dismissal orders. And it gives the commissioners free rein to ignore judicial precedent they dislike in disposing of complaints. That is the rule of lawlessness, not law.

**B**

The court's opinion blames that outcome on the "traditional[]" rule that courts cannot review exercises of agency discretion. *Citizens for Resp. & Ethics in Wash.*, 993 F.3d at 887 (quoting *Chaney*, 470 U.S. at 832). But as the Supreme Court and this court have long held, *Heckler v. Chaney* does not bar review in Federal Election Campaign Act

cases like this one. The panel's decision to the contrary is wrong for five reasons.

*First*, as the Supreme Court has specifically held, "reason-to-believe" assessments under the Federal Election Campaign Act are expressly excepted from the general presumption that decisions not to enforce the law are unreviewable. In *FEC v. Akins*, 524 U.S. 11 (1998), the Supreme Court ruled that, while "agency enforcement decisions 'ha[ve] traditionally been committed to agency discretion,'" the Federal Election Campaign Act is "a statute that explicitly indicates the contrary," *id*. at 26 (alteration in original) (quoting *Chaney*, 470 U.S. at 832). In so holding, the Supreme Court confirmed what this court had already observed. As Judge Silberman explained in his opinion for our en banc court in *Akins*, Section 30109(a)(8) is "an unusual statutory provision which permits a complainant to bring to federal court an agency's refusal to institute enforcement proceedings." *Akins v. FEC*, 101 F.3d 731, 734 (D.C. Cir. 1996) (en banc) (distinguishing *Chaney*), *vacated on other grounds*, 524 U.S. 11 (1998).

So the general presumption that nonenforcement decisions are unreviewable has no bearing on this case. *See Chamber of Commerce v. FEC*, 69 F.3d 600, 603 (D.C. Cir. 1995) (The Federal Election Campaign Act "is unusual in that it permits a private party to challenge the FEC's decision *not* to enforce.") (emphasis in original); *Common Cause v. FEC*, 842 F.2d 436, 449 (D.C. Cir. 1988); *Democratic Cong. Campaign Comm.*, 831 F.2d at 1133. *See also Commission on Hope II*, 923 F.3d at 1146 (Pillard, J., dissenting from denial of rehearing en banc) (The panel's holding that review is barred by *Chaney* "conflicts with the statutory text, the Supreme Court's holding in *Akins*, and several of our circuit decisions."); *Campaign Legal Ctr.*, 952 F.3d at 358–359 (Edwards, J., concurring) (The Commission's position that controlling commissioners' invocation of "prosecutorial discretion" makes their decision

unreviewable is "flatly at odds with the Supreme Court's decision in *FEC v. Akins*.").

*Second*, the separation-of-powers concerns that underlie courts' usual hesitancy to review matters of prosecutorial discretion apply only to actual exercises of prosecutorial discretion by the *agency*—by the Executive Branch. But that is not what happened here. The Commission itself never decided to dismiss this complaint on prosecutorial discretion grounds. Four votes are required for the Commission to take any action. *See* 52 U.S.C. § 30106(c). All we have here is a statement by two commissioners with a passing reference to their individual views on prosecutorial discretion. *See Common Cause*, 842 F.2d at 449 n.32 ("Of course, such a statement of reasons would not be binding legal precedent or authority for future cases."). So the agency itself has not grounded its decision (or non-decision) in prosecutorial discretion.

Extending the usual judicial deference to claims of prosecutorial discretion to this situation is especially inappropriate given that the other two commissioners who voted to dismiss the complaint in light of the deadlock did *not* invoke prosecutorial discretion. *See* J.A. 101–102 (indicating that Commissioners Goodman and Hunter voted against proceeding and Commissioners Goodman, Hunter, Walther, and Weintraub then voted to dismiss); J.A. 133–134 (statement of only Commissioners Goodman and Hunter invoking prosecutorial discretion); J.A. 135–137 (statement of Commissioner Weintraub not invoking prosecutorial discretion).

Neither the Commission nor the court's opinion in this case offers any reason why just two commissioners should have the power to formally exercise prosecutorial discretion on behalf of the full Commission or the Executive Branch in a way that

could trigger separation-of-powers concerns or any other recognized barrier to judicial review.

*Third*, a common concern when prosecutorial discretion is invoked—that there is no law to apply on review of discretionary, resource-based judgments that underlie decisions not to enforce—does not apply here. Congress made quite clear that a decision by a controlling bloc of commissioners to dismiss a complaint is subject to judicial review. *See* 52 U.S.C. § 30109(a)(8)(C). And our longstanding precedent reaching back 35 years requires that commissioners explain themselves at the reason-to-believe stage precisely to facilitate judicial review. *See Common Cause*, 842 F.2d at 449 n.32; *Democratic Cong. Campaign Comm.*, 831 F.2d at 1133–1134 (rejecting FEC argument that, based on "*Heckler v. Chaney*, 470 U.S. 821 (1985), deadlocks on the Commission are immunized from judicial review because they are simply exercises of prosecutorial discretion," and explaining that, "[b]ecause § [30109](a)(8)(A) provides broadly for court review of an FEC order dismissing a complaint, we resist confining the judicial check to cases in which * * * the Commission 'act[s] on the merits.'"); *cf. Citizens for Resp. & Ethics in Wash.*, 993 F.3d at 885 ("[I]f the Commission declines an enforcement action 'based *entirely* on its interpretation of the statute' such a decision might be reviewable.") (emphasis in original) (quoting *Commission on Hope*, 892 F.3d at 441 n.11). That is because there is ample law to apply to enforcement decisions grounded in statutory construction, analysis, and application. That two commissioners added "prosecutorial discretion" in their last breath after 14,500 words (more than a merits brief in our court or the Supreme Court) does not alter the ready availability of law for a court to apply. Especially when, as here, those legal grounds are expressly identified as "independently sufficient" grounds for the controlling commissioners' votes to dismiss the complaint, J.A. 123 n.95, wholly apart from any claim of

prosecutorial discretion, the statutory authorization of judicial review applies.

*Fourth*, the court's concern that judicial review of the Commission's legal reasons for dismissing the complaint would give rise to an advisory opinion is incorrect. Even if the Commission were determined for reasons within its discretion not to pursue this case, a judicial decision on whether the complaint shows reason to believe the Act was violated has concrete consequences for the ability of private complainants to file suit. *See* 52 U.S.C. § 30109(a)(8)(c). The commissioners emphasized that their legal justifications for disposing of the complaint were "independently sufficient" to support dismissal. J.A. 123 n.95. If the court were to agree with them on that score, CREW's own suit, too, would be barred. *See generally Orloski v. FEC*, 795 F.2d 156 (D.C. Cir. 1986) (agreeing with Commission's no-reason-to-believe determination and dismissing private suit).

Any claim of independent sufficiency was conspicuously absent from the controlling commissioners' invocation of prosecutorial discretion. Whether they would have chosen to rest on that thin reed if their legal basis for dismissal had been deemed invalid is an open question for the Commission to answer on remand. If, upon reconsideration, the commissioners had concluded there was compelling reason to believe that New Models was a political committee, the significance of New Models' possible inactivity might have seemed weak in comparison. (The Commission has already disavowed the statute-of-limitations rationale referenced by the minority. *See* Oral Arg. Tr. 21:13–22, 23:10–12.) The Supreme Court has been clear that, when confronted with such uncertainty, courts have the power to order a remand to the agency to allow it to answer the question itself. *See Akins*, 524 U.S. at 25.

*Fifth*, while judicial efforts to overturn an authoritative, operative exercise of prosecutorial discretion by an agency could trigger separation-of-powers concerns if the court were to order the Executive Branch to undertake an enforcement action it opposes, that worry has no purchase here. As Congress designed this statute, when a court finds legal error in the Commission's dismissal of a complaint, the Commission is given the right of first refusal on enforcement. 52 U.S.C. § 30109(a)(8)(c). If the agency is still opposed to or unable to bring an enforcement action, no court will force it to do so; all that happens is that the private complainant is authorized to bring a lawsuit in its own name under the Act. *Id*.; *see Commission on Hope II*, 923 F.3d at 1149 (Pillard, J., dissenting from denial of rehearing en banc).

In short, the court wrongly treats CREW's effort to pursue its private right to judicial review of two commissioners' already-judicially invalidated legal reasoning as if it were an attempt to force the Commission itself to proceed in the face of an agency exercise of constitutionally unreviewable prosecutorial discretion. The court's decision amounts to a wholly unwarranted rule of judicial abstinence that nullifies the explicit statutory provision for judicial review of private-party challenges to the Commission's substantive decisions.

## C

The harm worked by this decision is serious and recurring.

### 1

To begin with, affixing a brief invocation of prosecutorial discretion to lengthy substantive analyses in statements of reasons has become commonplace in Commission proceedings. This court errs in allowing those brief invocations to broadly insulate dismissal decisions from judicial review. Since *Commission on Hope*, approximately two-thirds of

Commission cases dismissed contrary to the General Counsel's reason-to-believe recommendation have included a reference to prosecutorial discretion. *See* Campaign Legal Ctr. En Banc Amicus Br. 9 & App.[3]

The decision in this case has fueled that trend. Again and again, the Commission has deadlocked on the reason-to-believe determination, after which the controlling commissioners have issued a statement of reasons with substantive legal analysis they purport to shield from judicial review by a reference to prosecutorial discretion. *See, e.g.*, Certification, MURs 7370 and 7496 (*In the Matter of New Republican PAC et al.*) (May 28, 2021); Statement of Reasons

---

[3] Since this case was argued, the same trend has continued unabated. In 2022 alone, six cases containing extensive legal analysis have been dismissed because of a separate reference to prosecutorial discretion. *See* Statement of Reasons of Chairman Allen J. Dickerson and Commissioners Sean J. Cooksey and James E. "Trey" Trainor, III, MUR 7425 at 4 (*Donald J. Trump Foundation*) (Feb. 15, 2022); Statement of Reasons of Chairman Allen J. Dickerson and Commissioners Sean J. Cooksey and James E. "Trey" Trainor, III, MURs 7575, 7580, 7592 & 7626 at 1 (*Brand New Congress*) (March 22, 2022); Statement of Reasons of Chairman Allen J. Dickerson and Commissioners Sean J. Cooksey and James E. "Trey" Trainor, III, MUR 7147 at 4 (*Make America Number 1*) (April 11, 2022); Statement of Reasons of Chairman Allen J. Dickerson and James E. "Trey" Trainor, III, MUR 7646 at 2 (*1820 PAC, et al.*) (April 15, 2022); Statement of Reasons of Chairman Allen J. Dickerson and Commissioners Sean J. Cooksey and James E. "Trey" Trainor, III, MUR 7784 at 12 (*Make America Great Again PAC*) (June 9, 2022); Statement of Reasons of Commissioners Sean J. Cooksey and James E. "Trey" Trainor, III, MUR 7486 at 2 (*45Committee, Inc.*) (Aug. 30, 2022). The exceptions cited by the concurring opinion simply underscore that the court's opinion empowers a minority of the Commission to turn judicial review on and off at will.

of Vice Chair Allen Dickerson and Comm'r Sean J. Cooksey, MURs 7340 and 7609 (*In the Matter of Great America Committee et al.*) (June 25, 2021); Statement of Reasons of Chair Shana M. Broussard, Comm'r Ellen L. Weintraub, and Comm'r Steven T. Walther, MUR 7522 (*In the Matter of Citizens for Waters et al.*) (Dec. 21, 2021).

A recent decision by our district court highlights the consequences of the court's decision. In a case almost identical to this one, CREW filed a complaint alleging that American Action Network had violated campaign finance laws by spending close to $18 million on political advertisements in a two-year period without registering as a political committee. *Citizens for Resp. & Ethics in Wash. v. American Action Network*, 590 F. Supp. 3d 164, 165–166 (D.D.C. 2022). The commissioners deadlocked 3–3 on whether the complaint's allegations stated reason to believe the Act had been violated. The controlling commissioners issued a lengthy statement of reasons explaining their legal theory as to why a large portion of American Action Network's advertisements constituted "genuine issue advocacy" that could not be considered in assessing whether the organization was a political committee. *Id.* at 166–167; *see* Statement of Reasons of Chairman Lee E. Goodman and Comm'rs Caroline C. Hunter and Matthew S. Petersen, MUR 6589 (*In the Matter of American Action Network*) (July 30, 2014). In the concluding paragraph, those commissioners made a glancing reference to prosecutorial discretion:

> [American Action Network] is an issue-advocacy group that only occasionally engaged in express advocacy. As such it cannot and should not be subject to the pervasive and burdensome requirements of registering and reporting as a political committee. For that reason, *and in exercise of our prosecutorial*

> *discretion*, we voted against finding reason to believe [the Network] violated the Act by failing to register and report as a political committee.

*Id.* at 27 (formatting modified and emphasis added); *see also id*. at 24 n.137 (again briefly referencing prosecutorial discretion).

CREW challenged the dismissal in court as contrary to law. In a decision issued after *Commission on Hope* but before the panel decision in this case, the district court held that the statement of reasons was subject to statutory review because the Commission's decision was fundamentally rooted in its legal determination that a broad swath of electioneering communications could not be factored into the "major purpose" analysis. *Citizens for Resp. & Ethics in Wash.*, 590 F. Supp. 3d at 169–172. The court noted that the controlling commissioners had dedicated virtually all of 27 single-spaced pages and 153 footnotes to substantive legal analysis, and that it would "gut the statutory scheme that Congress created * * * to foreclose judicial review whenever the [Commission] bases its dismissal on legal interpretations couched as 'prosecutorial discretion' or, worse yet, simply sprinkles the term throughout a Statement of Reasons in order to circumvent judicial review." *Id.* at 169.

After the panel decision in this case, the district court dismissed the case. In doing so, the court emphasized that it "stands by its prior reasoning," but because of the judicial-review-choking position taken by this court's opinion, it had no choice but to dismiss CREW's suit. *Citizens for Resp. & Ethics in Wash.*, 590 F. Supp. 3d at 173.

**2**

Worse still, the Commission and regulated parties are treating these now-judicially unreviewable statements of law as having precedential value. Minority blocs of commissioners are using the statements of reasons that accompany deadlocked decisions, including the judicially invalidated rationale employed in this case, as legal precedent within the agency. *See, e.g.*, Statement of Reasons of Chair Caroline C. Hunter and Comm'r Matthew S. Petersen at 8 n.47, MURs 6969, 7031 & 7034 (*Children of Israel et al.*) (Sept. 13, 2018); Statement of Reasons of Comm'rs Caroline C. Hunter and Matthew S. Peterson at 2–3, MUR 6402 (*American Future Fund*) (Dec. 23, 2014). This court has held that unreviewed statements issued by a minority of commissioners after a deadlock are not binding legal precedent for future cases. *See Common Cause*, 842 F.2d at 449 n.32. Yet, because those minority commissioners can singlehandedly preclude judicial review with the mere mention of prosecutorial discretion, there is no legal remedy for the commissioners' overt disregard for judicial rulings holding their mode of reasoning unlawful.

In addition, these legal pronouncements, while walled off from judicial review, directly influence the conduct of regulated parties, who regularly rely on and invoke them in subsequent proceedings before the Commission. For instance, in 2010, Google requested an advisory opinion stating that it could display political ads alongside its search results without disclaimers, and the Commission deadlocked. *See* Opinion Letter on Google Advisory Opinion Request at 2, Advisory Op. No. 2010-19 (Oct. 8, 2010). Subsequently, Facebook asked for its own advisory opinion on whether disclaimers are required for political ads on its platform, citing the deadlocked Google opinion for support. *See* Request by Facebook, Advisory Op. No. 2011-09 (April 26, 2011). The Commission once again deadlocked, effectively allowing the non-majority view that

political ads on such pages need not be accompanied by disclaimers to govern. *See* Closeout Opinion Letter on Facebook Advisory Opinion Request, Advisory Op. No. 2011-09 (June 15, 2011).

The whole point of requiring the commissioners who see no reason to believe the Act was violated to explain their reasoning after a deadlocked vote is "to make judicial review" of the decision to dismiss "a meaningful exercise." *National Republican Senatorial Comm.*, 966 F.2d at 1476. But the court's opinion has now turned that rationale on its head, placing the reviewability of Commission decisions entirely within the unilateral control of a minority of commissioners.

\* \* \* \* \*

It is telling that in its brief to this court in *Commission on Hope*, the Commission itself conceded that its nonenforcement decisions, even when premised upon prosecutorial discretion, were subject to judicial review. Brief for Federal Election Commission at 27–28, *Commission on Hope*, 892 F.3d 434 (No. 17-049); *see also Campaign Legal Ctr.*, 952 F.3d at 361–362 (Edwards, J., concurring). The Commission stated: "In the event the Commission's rationale for not pursuing a case is unreasonable—or if the Commission makes errors of law in its analysis—that exercise of discretion would be rejected on judicial review and the matter would be remanded to the agency." Brief for Federal Election Commission at 28, *Commission on Hope*, 892 F.3d 434 (No. 17-049).

Since *Commission on Hope*, the Commission has undergone a 180-degree change in position. Unsurprisingly, when this court offered it the opportunity to escape judicial review at will, the Commission happily accepted.

The bottom line is that the statutory promise of judicial review for aggrieved persons has been turned into a game that only the commissioners can play. When they want judicial review—if they believe they can obtain desired precedent— they can leave out the phrase "prosecutorial discretion." Whenever they do not want their dismissal reviewed— especially when, as here, they would prefer to keep applying judicially invalidated rules of interpretation—they can toss in a reference to prosecutorial discretion. That turns the rule of law upside down and renders the statutory provision for review of dismissal decisions a dead letter. In a perverse twist, those who are charged with enforcing the laws that protect the electoral building blocks of our democracy are free to operate outside the law. In this way, the panel decision renders the world of dark money in politics an even darker place.

For all of these reasons, I respectfully dissent from the denial of rehearing en banc.