# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued October 19, 2023          Decided January 5, 2024

No. 22-5339

CAMPAIGN LEGAL CENTER,
APPELLANT

v.

FEDERAL ELECTION COMMISSION,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:22-cv-01976)

---

*Megan P. McAllen* argued the cause for appellant. With her on the briefs were *Erin Chlopak* and *Allison Walter*.

*Greg J. Mueller* argued the cause for appellee. With him on the brief were *Lisa J. Stevenson*, *Kevin Deeley*, and *Harry J. Summers*.

Before: SRINIVASAN, *Chief Judge*, HENDERSON, *Circuit Judge*, and ROGERS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* ROGERS.

ROGERS, *Senior Circuit Judge*: The Federal Election Commission dismissed an administrative complaint by the Campaign Legal Center alleging campaign finance violations by two presidential campaign committees. Although dismissals predicated upon the Commission's exercise of prosecutorial discretion are excepted from judicial review, Campaign Legal contends that the Commission's invocation of discretion was dependent upon legal analysis and thus subject to review under the Federal Election Campaign Act. The district court concluded the Commission's reliance on "quintessential" considerations of prosecutorial discretion stood "apart" from its legal analysis and precluded review. In view of circuit precedent, we affirm.

## I.

The Federal Election Campaign Act ("FECA"), 52 U.S.C. § 30101 *et seq.*, "seeks to remedy any actual or perceived corruption of the political process." *FEC v. Akins*, 524 U.S. 11, 14 (1998). At its heart are disclosure requirements that the Supreme Court has stated are "particularly effective means of arming the voting public with information" and "deter[ring] actual corruption and avoid[ing] the appearance of corruption" in today's politics. *McCutcheon v. FEC*, 572 U.S. 185, 223–24 (2014). The Act requires covered "political committee[s]" to "file reports of receipts and disbursements" with the Federal Election Commission that identify "each person to whom an expenditure . . . in excess of $200" was made, as well as the "date, amount, and purpose" of the expenditure. 52 U.S.C. § 30104(a)(1), (b)(5)–(6). The Commission of six voting members, no more than three of whom may be "affiliated" with the same political party, *id.* § 30106(a)(1), (a)(2)(A), may investigate potential violations on its own initiative or in response to an administrative complaint, which may be filed by any person who "believes" that a statutory violation has

occurred. *Id.* §§ 30107(a), 30109(a). If at least four Commissioners find "reason to believe" a complaint's allegations, the Commission "shall" investigate and pursue appropriate remedies. *Id*. § 30109(a)(2), (4)–(6). In the absence of four affirmative "reason to believe" votes, the Commission may dismiss the complaint. *Id.* §§ 30106(c), 30109(a)(2). The Commissioners who vote against proceeding must issue an explanatory statement, which is treated as expressing the Commission's rationale and forms the basis of judicial review. *Campaign Legal Ctr. v. FEC*, 31 F.4th 781, 785 (D.C. Cir. 2022).

"Any party aggrieved by" the dismissal may seek judicial review on the ground that the Commission acted "contrary to law." 52 U.S.C. § 30109(a)(8)(A)–(C). Relief is appropriate if the Commission relied on "an impermissible interpretation of the Act," or if the dismissal was otherwise "arbitrary or capricious, or an abuse of discretion." *Orloski v. FEC*, 795 F.2d 156, 161 (D.C. Cir. 1986). Upon a judicial determination that the dismissal was improper, the Commission has 30 days "to conform with such declaration," or the complainant may file suit. 52 U.S.C. § 30109(a)(8)(C).

Access to judicial review of Commission dismissals, however, is far from absolute. "In our system of separated powers, an agency's decision not to enforce the law is an exercise of executive discretion and therefore generally unreviewable by the courts." *Citizens for Resp. & Ethics v. FEC* ("*New Models*"), 993 F.3d 880, 882 (D.C. Cir. 2021). "[R]econciling" this principle with FECA's "unusual" judicial review provision, the court has held that "a Commission nonenforcement decision is reviewable only if the decision rests *solely* on legal interpretation." *Id.* at 884 (citing *Citizens for Resp. & Ethics in Washington v. FEC* ("*Commission on Hope*"), 892 F.3d 434, 441–42 (D.C. Cir. 2018)).

Campaign Legal Center filed an administrative complaint in July 2020 alleging that former President Trump's campaign committee ("Donald J. Trump for President, Inc.") and a joint fundraising committee ("Trump Make America Great Again Committee") failed, as required by 52 U.S.C. § 30104(b), to report more than three quarters of a billion dollars in payments to sub-vendors and staff – concealing the expenditures by routing them through sham payments to two LLCs controlled by senior campaign figures. *See* Admin. Compl., MUR 7784 (July 24, 2020). In May 2022, the Commission deadlocked 3-3 on finding "reason to believe" the complaint. After deadlocking 3-3 twice more, on a second "reason to believe" vote and a separate vote on whether to dismiss the complaint pursuant to the Commission's prosecutorial discretion under *Heckler v. Chaney,* 470 U.S. 821 (1985), the Commission voted 4-2 to close the file and dismiss the complaint.

The three Commissioners who voted against finding "reason to believe" explained that "the legal support for enforcement" of the alleged reporting violations was "remarkably thin," and that "the only arguable factual support comes from inferences based upon media reports citing anonymous sources." Statement of Reasons of Chairman Allen J. Dickerson and Commissioners Sean J. Cooksey and James E. "Trey" Trainor, III, MUR 7784 (June 9, 2022) at 1 (hereinafter "2022 Statement"). Refusing to "pursue enforcement-by-rumor," they "instead voted to dismiss this matter as an exercise of prosecutorial discretion pursuant to *Heckler v. Chaney*." *Id.* After elaborating on factual and legal issues, *id.* at 2–12, they stated:

> We foresee significant litigation risk if we were to act on [this record] and, as importantly, we decline to permit the investigatory resources of the federal government to be mobilized on such a basis. This is

particularly so here, where the size and scope of the proposed investigation could quickly consume an outsized share of the resources available to the Commission.

*Id.* at 12. They also observed that the "regulatory environment is uncertain at best," citing a related pending Commission rulemaking petition, *id.*, and noted that, although "numerous campaigns have used similar vendor arrangements in the past, [] the Commission has declined to pursue enforcement action" in those cases. *Id.*

Campaign Legal filed suit, alleging that the dismissal was "contrary to law." Compl. (July 8, 2022); *see* 52 U.S.C. § 30109(a)(8)(A). The district court granted the Commission's motion to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(6), concluding that the Commissioners invoked discretion in a manner precluding judicial review under this court's precedents. *Campaign Legal Ctr. v. FEC*, 1:22-cv-01976 (D.D.C. Dec. 8, 2022) ("Mem. Op."). It found the "practical" concern "that the 'size and scope of the proposed investigation' could quickly consume the resources available to the Commission" reflected "quintessential consideration[s] in the exercise of prosecutorial discretion" that "stand[] apart from the legal questions" at issue. Mem. Op. at 16–17 (quoting 2022 Statement at 12). The district court also noted the discussion of the "uncertain regulatory environment." Mem. Op. at 17.

## II.

On appeal, Campaign Legal contends that the Commissioners "in no way 'relied on' discretionary factors to dismiss plaintiff's administrative complaint, but rather simply characterized their conclusive legal determinations on the

merits as an exercise of prosecutorial discretion." Appellant's Br. 20 (quoting Mem. Op. at 16). Because "each of the putative discretionary justifications . . . was expressly dependent upon legal and factual judgments about the allegations in the complaint," Campaign Legal maintains that even though the "Commissioners couched their rationale in superficially prudential terms, such 'magic words' cannot manifest independent discretionary justifications where none exist." *Id.* at 30–31. For instance, "asserted agency resource concerns are impossible to separate from their underlying judgment that there was 'insufficient factual or legal support' to move forward." *Id.* at 34 (quoting 2022 Statement at 12–13). Because the Commissioners reached that conclusion after applying "improper legal and evidentiary tests," it is "impossible to know whether" absent that flawed analysis their "stated concerns about 'the size and scope of the proposed investigation' would still obtain." *Id.* at 35 (quoting 2022 Statement at 12).

This court has distinguished two different types of Commission refusals to prosecute administrative complaints. "When interpreting FECA, the Commission renders a legal determination 'not committed to the agency's unreviewable discretion.'" *New Models*, 993 F.3d at 884 (quoting *Comm'n on Hope*, 892 F.3d at 441). If "the Commission declines an enforcement action 'based entirely on its interpretation of the statute,'" the decision is reviewable pursuant to the "contrary to law" provision. *Id*. Because FECA does "not limit the Commission's enforcement discretion [] by providing specific requirements for the exercise of that discretion," when the Commission "weigh[s] [] practical enforcement considerations," FECA "provides 'no law to apply.'" *Id.* (quoting *Comm'n on Hope*, 892 F.3d at 439–40).

*Commission on Hope* was the court's first Commission discretionary refusal to prosecute case and held unreviewable a dismissal where the relevant Commission statement "placed their judgment [] on the ground of prosecutorial discretion." 892 F.3d at 439. The court reiterated this principle as applied to statements relying on both law and discretion in *New Models*. There, the Commissioners issued a thirty-two page statement "dedicated most[ly]" to "legal analysis of the alleged violations[,]" concluding that the organization did not qualify as a covered "political committee" under the statute. 993 F.3d at 883. The concluding paragraph invoked *Heckler*, explaining that the Commissioners "were also declining to proceed with enforcement 'in exercise of their prosecutorial discretion.'" *Id.* (citation omitted). The Commissioners had added only that "given the age of the activity and the fact that the organization appears no longer active, proceeding further would not be an appropriate use of Commission resources." *Id.* (citation omitted).

The court held this brief invocation of discretion was sufficient to bar judicial review, as it "explicitly relie[d] on prosecutorial discretion" and "expressed discretionary considerations at the heart of [*Heckler*'s] holding, such as concerns about resource allocation" and "potential evidentiary . . . hurdles." *Id.* at 885. Those discretionary considerations, the court said, were a "distinct ground[]" on which the "Commission's decision to dismiss . . . rested." *Id.* at 884. Rejecting the notion that the inclusion of "lengthy" legal bases for dismissal made the decisions reviewable, *see id.* at 895–96 (Millett, J., dissenting), the court stated that "[a]lthough [] analysis of statutory requirements standing alone may be amenable to judicial review," the "Commission's legal analysis here is not reviewable because it is joined with an explicit exercise of prosecutorial discretion." *Id.* at 885–87. Because "[t]he Commission's invocation of prosecutorial discretion []

rested squarely on prudential and discretionary considerations" and was "offered [] in addition to its legal analysis," the court concluded that there was "no room [] to selectively exercise judicial review based on whether the Commission places more or less emphasis on discretionary factors when declining to pursue enforcement." *Id.*

Just so here. The Commissioners' "explicit[] reli[ance]" on prosecutorial discretion, *id.* at 885, followed nearly a full page of analysis discussing several classic criterion in the exercise of prosecutorial discretion. They observed that the proposed investigation was inconsistent with the agency's priorities and resource allocation given its "size and scope," worried that the agency was unlikely to succeed in pursuing the allegations and that enforcement carried "significant litigation risk," characterized enforcement as deviating from the Commission's past practice, and articulated why it was inappropriate given what they regarded as a shifting and uncertain regulatory landscape and the complaint's undue reliance on anonymously-sourced reporting. 2022 Statement at 12. These "discretionary considerations [lie] at the heart of [*Heckler*'s] holding" and implicate "concerns about resource allocation" and "potential evidentiary . . . hurdles." *New Models*, 993 F.3d at 885; *see Heckler*, 470 U.S. at 831.

Some of these considerations appear distinct from and lack a clear nexus to any reviewable legal analysis. As the district court observed, the concern that the "the size and scope of the proposed investigation could quickly consume an outsized share of the resources available to the Commission," 2022 Statement at 12, "stands [particularly] apart." Mem. Op. at 17. An agency's careful management of its limited resources is a core policy prerogative and its choice not to pursue especially resource-intensive matters ordinarily does not center on the legal merits, but rather the agency's pragmatic estimation of

the resource demands of the proposed action, its size, duration, and personnel requirements. These are the types of prudential judgments that the Supreme Court has stated are "peculiarly within" the agency's "expertise" and form the core of unreviewable discretion. *Heckler*, 470 U.S. at 831–32.

To the extent that Campaign Legal views this discussion as inextricably intertwined with antecedent legal analysis, it maintains that the Commissioners regarded the legal and evidentiary support for the complaint as unduly dim and over-estimated the potential resource demands of pursuing its claims. But it does not follow that the Commission's observation about the "size and scope" of the investigation must be regarded as fundamentally premised on substantive legal determinations. It was evident from the complaint that the alleged violations were significant in terms of their estimated value and the complexity and timespan of the alleged obfuscatory mechanism. Citing several dozen news reports, the complaint claimed to identify a scheme involving at least two "conduit" organizations, at least four enumerated ultimate payee subvendors, and hundreds of payments for a range of purposes over multiple years. Admin. Compl. ¶¶ 26–48, 70–91. Campaign Legal itself embraces undisputed practical measures of the allegations' scope, claiming that "the potential amount in violation, $781,584,527, would have been the largest in the Commission's history" and involved the "lion's share" of the Trump team's "spending for the entire presidential election cycle," the most expensive in United States history. Appellant's Br. 1. These intuitive indicia of size and resource intensiveness bear no discernable relationship to theoretically reviewable legal inquiry.

Campaign Legal maintains that the grammar of the relevant sentence evinces the interconnection between the Commissioners' concern over the "size and scope" of the

investigation and antecedent legal conclusions. The relevant phrasing reads in full: "This is particularly so here, where the size and scope of the proposed investigation could quickly consume an outsized share of the resources available to the Commission." 2022 Statement at 12. Campaign Legal reads "[t]his is particularly so here" as suggesting that the following statement about the "size and scope" of the investigation is premised on preceding legal determinations. Even were this contention not forfeited since raised for the first time at oral argument, it is unpersuasive. The key phrasing in *New Models* was invoked in a sentence that otherwise expressly referred to the Commission's preceding legal conclusions, yet the court concluded the statement was "explicit []" in its invocation of discretion. 993 F.3d at 885. Here the relevant sentence stands on its own and is not surrounded by discussion of legal conclusions. Analogizing to *New Models*, where the Commission's statement dedicated thirty-one pages to the merits and only a single concluding sentence to discretion, Mem. Op. at 15 (citing *New Models*, 993 F.3d at 885), the district court correctly observed that it was "clearer in this case than it was in *New Models*" that the Commissioners invoked discretion as an "independent reason for dismissal." Mem. Op. at 17.

Nor does the phrase "[t]his is particularly so" appear to refer to any substantive legal determination. The immediately preceding sentence reads: "We foresee significant litigation risk if we were to act on [this record] and, as importantly, we decline to permit the investigatory resources of the federal government to be mobilized on such a basis." 2022 Statement at 12. These too are prudential considerations at the heart of *Heckler'*s conception of enforcement discretion — not reviewable legal determinations. *Cf. Heckler*, 470 U.S. at 831. Any reviewable legal analysis is at least two steps away from the Commission's stated concern about the investigation's

"size and scope." That is too attenuated a link to support the logical leap that intuitively prudential discussion conceals reviewable legal conclusions.

Finally, Campaign Legal urges the court to reconsider the propriety of the *Commission on Hope–New Models* rule due to an alleged conflict with the Supreme Court's opinion in *Akins* and several of this court's FECA holdings. Appellant's Br. 36–41. But "[o]ne three-judge panel does not have the authority to overrule another three-judge panel." *LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996) (*en banc*). In *New Models*, 993 F.3d at 890–95, the court addressed these same objections and explained why its holding was consistent with *Akins* and this court's FECA precedents. Rehearing *en banc* was subsequently denied. *New Models II*, 55 F.4th 918 (D.C. Cir. 2022).

Because the Commission's invocation of discretion was offered "in addition" to its legal analysis, as in *New Models*, 993 F.3d at 886, the 2022 Statement of Reasons is unreviewable, and upon *de novo* review, *Stop This Insanity Inc. Emp. Leadership Fund v. FEC*, 761 F.3d 10, 13 (D.C. Cir. 2014), the court affirms the dismissal of the complaint.